ACCEPTED
01-14-00370-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/13/2015 4:04:08 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00370-CV

IN THE COURT OF APPEALS FOR
THE FIRST JUDICIAL DISTRICT
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/13/2015 4:04:08 PM
CHRISTOPHER A. PRINE
Clerk

REPUBLIC PETROLEUM L.L.C. AND REPUBLIC PETROLEUM PARTNERS L.P.,

Appellants,

v.

DYNAMIC OFFSHORE RESOURCES NS L.L.C. AND W&T OFFSHORE, INC., SUCCESSOR BY MERGER OF OFFSHORE SHELF L.L.C.,

Appellees.

Appeal from the 270th Judicial District Court
of Harris County, Texas

Oral argument requested

REPLY BRIEF OF CROSS-APPELLANTS DYNAMIC OFFSHORE RESOURCES NS L.L.C. AND W&T OFFSHORE, INC. SUCCESSOR BY MERGER OF OFFSHORE SHELF, L.L.C.

GIEGER, LABORDE & LAPEROUSE, L.L.C.
KENNETH H. LABORDE
Texas State Bar No. 11786070
klaborde@glllaw.com
DANIEL G. RAUH
drauh@glllaw.com
Louisiana State Bar No. 27280
(*Pro Hac Vice*)

i

CHARLOTTE A. FIELDS
cfields@glllaw.com
Texas State Bar No. 24032175
Gieger, Laborde & Laperouse,
1177 West Loop South, Suite 750
Houston, Texas 77027
Telephone:  (832) 255-6000
Facsimile:  (832) 255-6001

COUNSEL FOR DEFENDANT
DYNAMIC OFFSHORE RESOURCES NS,
L.L.C.

*- AND-*

JOHNSON DELUCA KURISKY &
GOULD
A Professional Corporation
BRADLEY L. DELUCA
bdeluca@jdkglaw.com
Texas Bar No. 05653800
BRIGID D. ASHCRAFT
bashcraft@jdkglaw.com
Texas Bar No. 09193167
4 Houston Center
1221 Lamar, Suite 1000
Houston, Texas 77010
(713) 652-2525 – Telephone
(713) 652-5130 – Facsimile

COUNSEL FOR DEFENDANT
W&T OFFSHORE, INC., successor by
merger of OFFSHORE SHELF, L.L.C.

# TABLE OF CONTENTS

Index of Authorities ......................................................................................iv

Statement of Facts ........................................................................................1

    SUMMARY OF ARGUMENT.............................................................2

    I. Republic L.L.C. had no standing and/or capacity to sue or recover damages ........................................................................................2

    A. Privity of contract...................................................................2

    B. Standing and capacity.............................................................2

    C.  Rule 93 verifications .............................................................3

    D. Republic L.L.C.'s working interest ......................................3

    E. The Charge .............................................................................4

ARGUMENT ...................................................................................................5

    I.  Privity of contract does not equate with standing ...........................5

    II. The HI 115 OOA did not give Republic L.L.C. capacity to sue or recover damages ................................................................................6

    III. Defendants' rule 93 verifications were sufficient  .........................9

    IV. Republic L.L.C.'s working interest ownership is relevant ...........10

    V.  Defendants did not waive any points of error .............................12

Prayer ...........................................................................................................16

Appendix .......................................................................................................16

Certificate of Compliance  ...........................................................................18

Certificate of Service  ..................................................................................18

# INDEX OF AUTHORITIES

**Cases**

*Austin Nursing Ctr. Inc. v. Lovato,* 171 S.W.3d 845
(Tex. 2005) ......................................................................................13

*Byrd v. Estate of Nelms,* 154 S.W.3d 149
(Tex. App. - Waco 2004, pet. denied) ..........................................14

*Cecil v. Smith,* 804 S.W.2d 509 (Tex. 1991) .................................15

*Cooper v. Circle Ten Council Boy Scouts of America,* 254 S.W.3d 689
(Tex. App. - Dallas 2008, no pet.) ................................................10

*Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124
(Tex. App. - Fort Worth 2011, pet. struck)....................................14

*Denman v. SND Operating, L.L.C.*, No. 06-04-00061-CV, 2005 WL 2316177
(Tex. App. - Texarkana Sept. 23, 2005, no pet.) ......................12,13

*Fuqua v. Taylor*, 683 S.W.2d 735
(Tex. App. – Dallas 1984, writ ref'd n.r.e.) ..................................11

*Genender v. USA Store Fixtures, LLC,* 451 S.W.3d 916
(Tex. App. - Houston [14th Dist.] 2014, no pet.) ............................1

*Harmon v. 1401 Elm Street Condominium Ass'n,* 139 S.W.3d 411
(Tex. App. - Dallas 2004, no pet.) ................................................16

*Interstate Contracting Corp. v. City of Dallas,* 135 S.W.3d 605
(Tex. 2004) ........................................................................................5

*John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645
(Tex. App. - Dallas 2013, pet. denied) ..........................................13

*Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922
(Tex. 1998) ......................................................................................14

iv

*Mekeel v. U.S. Bank Nat. Ass'n,* 355 S.W.3d 349
(Tex. App. - El Paso 2011, pet. dism'd)............................................................10

*Nauslar v. Coors Brewing Co.,* 170 S.W.3d 242
(Tex. App. - Dallas 2005, no pet.) ...................................................................6

*Republic National Bank of Dallas v. National Bankers Life Ins. Co*, 427
S.W.2d 76 (Tex. Civ. App. -  Dallas 1968, writ ref'd n.r.e.)............................5

*Rhey v. Redic*, 408 S.W.3d 440
(Tex. App. - El Paso 2013, no pet.) ..................................................................15

*Shipley v. Unifund CCR Partners,* 331 S.W.3d 27
(Tex. App. - Waco 2010, no pet.) ......................................................................13

*Solares v. Solares,* 232 S.W.3d 873
(Tex. App. - Dallas 2007, no pet.) ..............................................................15, 16

*Star Enterprise v. Marze,* 61 S.W.3d 449
(Tex. App. - San Antonio 2001, pet. denied)....................................................14

*State Bar v. Gomez,* 891 S.W.2d 243 (Tex. 1994)............................................5

*Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504
(Tex. 1995)..........................................................................................................5

*T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218
(Tex. 1992).....................................................................................................14, 15

*United Parcel Serv., Inc. v. Tasdemiroglu,* 25 S.W.3d 914
(Tex. App. - Houston [14th Dist.] 2000, pet. denied).......................................15

*Webb v. Voga*, 316 S.W.3d 809
(Tex. App. - Dallas 2010, no pet.).. ...................................................................6

**Rules / Statutes**

Tex. R. App. P. 33.1(a) ......................................................................................10

Tex. R. App. P. 38.1(g)........................................................................................1

Tex. R. Civ. P. 93 ...........................................................................10

Tex. Civ. Prac. & Rem. Code §132.001 ..........................................10

**Other Authorities**

2 McDonald & Carlson Tex. Civ. Prac. § 7:21 (2d. ed.)...................10

# STATEMENT OF FACTS

Republic L.L.C. did not address or controvert the following statements in Defendants' Appellants' Brief, Statement of Facts:

1.      Effective October 15, 2008, Republic L.L.C. assigned 100% of its working interest in HI 115 to Republic L.P., removing Republic L.L.C. from any ownership interest in HI 115.  (52 RR Defs.' Ex. 0915-0079, item F); (52 RR Defs.' Ex. 926); (4 RR 31); (CR 504).

2.      Effective May 11, 2007, by various assignments, Republic L.P. acquired all ownership interest previously held by Republic L.L.C.  (52 RR Defs.' Ex. 927); (52 RR Defs.' Ex. 0915-0079, item G); (4 RR 44-45, 47, 51-52).

3.      The damages sought by Republic L.L.C. did not begin to accrue until July 3, 2008.  (9 RR Pls.' Ex. 39-143).

4.      Should Republic L.L.C. be awarded damages through October 15, 2008, the damage award should be rendered in the amount of $32,971.73 (23.75% of $138,828.35, the damages incurred through October 15, 2008).  (52 RR Defs.' Exs. 915-0069-0079 and 926); (9 RR Pls.' Ex. 139-143); (CR 504).

5.      Republic L.L.C. presented the case as though it were seeking 100% of the damages.  (5 RR 137-138).

Thus, these facts are uncontroverted.  See Tex. R. App. P. 38.1(g) ("The court will accept as true the facts stated unless another party contradicts them.") *See also*, *Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916, 923 n.7 (Tex. App. - Houston [14th Dist.] 2014, no pet.).

1

## SUMMARY OF ARGUMENT

### I. Republic L.L.C. had no standing and/or capacity to sue or recover damages

The undisputed facts establish that Republic L.L.C. did not have standing and/or capacity to sue or recover damages as it had no ownership in the HI 115 Well effective May 11, 2007, and did not file suit as operator or on behalf of the other HI 115 owners.[1] Republic L.L.C.'s efforts to establish otherwise fail.

#### A. Privity of contract

Republic L.L.C. argues that it has standing because it was in privity of contract with the Defendants. Privity of contract, however, does not equate with standing.

#### B. Standing and capacity

Republic L.L.C. argues that it had standing and capacity by virtue of the HI 115 OOA and references one portion of the record in support of same. However, the cited reference actually reflects that effective July 16, 2010, Rooster Petroleum L.L.C. ("Rooster") became the operator of the HI 115 Well. (52 RR Defs.' Ex.

---

[1] Republic L.L.C. argues in point II that this Court should not reverse and render a Final Judgment that Republic L.L.C. be awarded zero damages or, alternatively, $32,971.73, because Defendants did not meet "any of the standards of review available to them." Brief, p. 36. In support of this argument, Republic L.L.C. sets forth inapplicable standards of review, states that because Defendants filed a motion for new trial, "the filing of a motion to modify judgment was improper", *Id.*, citing no legal authority for such a proposition, and that it was "inexplicably unfair and fundamentally erroneous for the trial court to grant Defendants' Motion to Modify Judgment." *Id.* Defendants previously addressed each of these arguments in its Appellants' Brief as well as in their Appellees' Brief, and incorporate the arguments herein by reference. Defendants note, however, that the uncontroverted facts set forth in the Statement of Facts ***alone*** establish that a take-nothing judgment should be entered by this Court.

915-0094). Republic L.L.C was not the operator when suit was filed and has no capacity or standing to sue or recover damages as such.

Republic L.L.C.'s reliance on the testimony of Scott Stanford ("Stanford") in support of its standing and capacity arguments is misplaced. The testimony presented was in a bill of exception which the district court ruled inadmissible.

## C.    Rule 93 verifications

Republic L.L.C. complains that although Defendants filed verified denials regarding capacity, such verifications were insufficient because Defendants did not allege the bases of personal knowledge. While Defendants' verifications were sufficient, Defendants could have utilized unsworn declarations in which the bases of personal knowledge is not required. Moreover, an objection regarding lack of personal knowledge must be lodged at the district court level and a ruling obtained, which Republic L.L.C. failed to do and waived the complaint.

## D.    Republic L.L.C.'s working interest

Republic L.L.C. argues *for the first time* that the PHA "does not concern the working interest ownership of the [HI 115 Well]" and thus its working interest (ownership share) is "irrelevant" to the dispute. Were this new and novel argument accepted, hundreds of years of case law regarding the need for ownership to recover damages would be turned on its head.

Aside from these issues, Republic L.L.C. entered into the PHA as the "owner" of the HI 115 Well and the terms of the HI 115 OOA establish that expenses and revenue (and thus, damages) derived from the production of gas from the HI 115 Well were allocated based upon the working interest ownership. The PHA and ownership are relevant and inextricably entwined.

### E. The Charge

Lastly, Republic L.L.C. argues that since Defendants "make no claim of charge error", Defendants' "capacity challenge can have no merit." Brief, p. 25-26. While Republic L.L.C.'s argument is unclear, Defendants are not required to allege charge error as they are claiming that the district court erred, *inter alia*, in denying Defendants' JNOV and Motion to Modify Judgment. Even if Defendants were required to assert charge error, their complaints were not waived as 1) Defendants' objected to Republic L.L.C.'s questions, 2) Defendants properly filed verified denials which shifted the burden to Republic L.L.C. to obtain a jury finding on the issue, 3) the district court held as a matter of law that Republic L.L.C. did not file suit as operator or in any representative capacity thus the issue should not be submitted to the jury, 4) standing and capacity are legal issues which should not be submitted to the jury, and 5) Defendants properly preserved error by objecting to the questions, filing a Motion for Directed Verdict, JNOV, Motion for New Trial and Motion to Modify Judgment.

4

The Modified Final Judgment should be reversed and rendered that Republic L.L.C. take-nothing, or, alternatively, that Republic L.L.C.'s damages are limited to $32,971.73 and attorney's fees through trial of $125,000.

## ARGUMENT

### I. Privity of contract does not equate with standing

Republic L.L.C. argues that since it was a signatory to the PHA, privity of contract existed which "provides a party with standing to maintain a suit on the contract." Brief, p. 10. However, the case cited by Republic L.L.C. for this proposition, *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 618 (Tex. 2004), actually states that "…our recognition of pass-through claims does not run afoul of our long-held tradition of requiring privity of contract *and* standing for a party to maintain suit." (Emphasis added.) The only other case cited by Republic L.L.C. for this proposition does not mention standing, only privity of contract. *Republic National Bank of Dallas v. National Bankers Life Ins. Co*, 427 S.W.2d 76, 79 (Tex. Civ. App. - Dallas 1968, writ ref'd n.r.e.).

While Republic L.L.C. was in privity of contract with Defendants, it did not have standing as standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff. *See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 517–18 (Tex. 1995). *See also State Bar v. Gomez,* 891 S.W.2d 243, 245 (Tex. 1994). Republic L.L.C. has no distinct injury since it had

5

no working interest ownership in the HI 115 Well.[2] *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 252 (Tex. App. - Dallas 2005, no pet.) ("[Plaintiff] asserts standing in its roles as *former* general partner of Willow's general partner and *former* limited partner of Willow. […] [Plaintiff] sold…the entirety of its interest in Willow. None of the cases it cites stands for the proposition that a partner that has sold its entire interest in the partnership can personally recover on a claim belonging to that partnership.") (Emphasis in original); *Webb v. Voga*, 316 S.W.3d 809, 815 (Tex. App. - Dallas 2010, no pet.) ("The evidence shows Webb was not a property owner. We conclude that Webb lacked standing for her causes of action …and, therefore, the trial court lacked subject matter jurisdiction over those causes of action.")

## II. The HI 115 OOA did not give Republic L.L.C. capacity to sue or recover damages

Republic L.L.C. argues that it had capacity to sue as operator under the HI 115 OOA. Even if this were true, which it is not, the district court ruled that Republic L.L.C. *did not bring suit as the operator*. (CR 1055) (5 RR 138) Moreover, Republic L.L.C.'s request for a trial amendment to remedy its lack of

---

[2] Republic L.L.C. also alleges that it established standing because Defendants did not assert that other parties should be joined to the lawsuit and that Defendants made judicial admissions. Defendants addressed these allegations in their Response to Republic L.L.C's Appellant's Brief and incorporate the arguments herein.

capacity was denied.[3] (CR 1056) (6 RR 119).

Further, Republic L.L.C. was not the operator when the lawsuit was filed, contrary to its statement to this Court that "[e]ffective July, 16, 2010, the [OOA] was again amended… However, Republic remained the designated Operator under the [OOA]." Brief, p. 17. The cite to which Republic L.L.C. refers *actually states*:

III.     The operator for the Lease shall be:

***Rooster Petroleum, LLC***

(52 RR Defs.' Ex. 915-0094). When suit was filed on December 9, 2010, Republic L.L.C. could not have brought claims in the capacity of operator since that position was held by Rooster. (4 RR 58).

Republic L.L.C. also cites inadmissible testimony for the proposition that "any recovery in the lawsuit will be split out to the non-operating working interest partners." Brief, p. 16. This testimony was obtained while Republic L.L.C. was ***making its bill of exception and was ruled as inadmissible by the district court***. (5 RR 113-138). A portion of the objection and bill of exception follows:

Q. Was it the understanding of your partners… that this provision authorized Republic Petroleum, LLC, to prosecute the litigation?

MR. DELUCA: Objection, Your Honor. May we approach.

THE COURT: Okay.

---

[3] Republic L.L.C. does not challenge the district court's denial of leave to file a trial amendment on appeal.

7

(Bench discussion…)

MR. DELUCA: Republic Petroleum, LLC, and Republic Petroleum Partners, LP, brought this case in their individual capacity. They did not bring it as an operator…. [T]he PHA names Republic Petroleum, LLC, as, quote, Producer, not Operator.

THE COURT: What part am I missing here?

*MR. DELUCA:* They didn't bring it on behalf of everybody else. They only brought it on behalf of themselves.
……

*MR. DELUCA:* For their own damages, not all the partners.

*THE COURT:* Is that what your trying to do?

*MR. BATTAGLINI:* That's what our pleading says.

**BILL OF EXCEPTIONS**

BY MR. BATTAGLINI

Q. Mr. Stanford, is it true that the damages that were calculated in this case are 100 percent damages?

A. They are.

Q. Is it true, when you brought this lawsuit, you brought it on behalf of 100 percent of the gas stream owners?

A. Yes, I did.  (5 RR 113-138).

The district court ruled the testimony inadmissible, stating, "I don't see anything in it [Plaintiffs' Fourth Amended Petition] that indicates that it was brought in any kind of representative capacity or was seeking to recover damage on behalf of

8

anybody other than the Republic entities. That's my ruling."[4] (5 RR 113-138). No evidence or admissible testimony supports Republic L.L.C.'s contention that the HI 115 OOA conferred capacity to bring suit.

### III. Defendants' rule 93 verifications were sufficient

Republic L.L.C. admits that Defendants filed verified denials disputing Republic L.L.C.'s capacity to sue or recover damages, but contends that such verifications were defective because they did not set forth the bases of personal knowledge. Brief, p. 19. Republic L.L.C. cites a few cases dealing with the need for personal knowledge in an affidavit supporting a summary judgment, but no cases dealing with such a requirement for a verified denial. Nonetheless, Defendants' verifications are not deficient. (CR 687) (CR 701). In fact, the verifications 1) specifically recite personal knowledge, 2) reference the paragraphs in the Answers to which they refer, and 3) the referenced paragraphs set forth the *public documents* which indicate Republic L.L.C.'s lack of capacity including the fact that Rooster was the operator at the time suit was filed. (CR 650-651) (CR 697-98).

---

[4] Republic L.L.C.'s contention that the language in the OOA permitting the operator to "supervise the handling, conduct and prosecution of all Claims involving activities or operations" somehow "authorized Republic to prosecute the lawsuit" is belied by the fact that Republic L.L.C. was not the operator when suit was filed and by the terms of the OOA itself which require consent of the other working interest owners as fully addressed by Defendants in their Response to Republic L.L.C's Appellant's Brief which is incorporated herein.

Furthermore, Defendants did not have to file a verification setting forth personal knowledge inasmuch as an unsworn declaration is sufficient. *See* Tex. Civ. Prac. & Rem. Code §132.001. *See also*, 2 McDonald & Carlson Tex. Civ. Prac. § 7:21 (2d. ed.) ("Under Rule 93,…[i]n lieu of [a] … verification …a litigant may use an unsworn declaration.")

Lastly, "an objection that an affidavit is not based on personal knowledge is an objection to a defect in form. *Cooper v. Circle Ten Council Boy Scouts of America,* 254 S.W.3d 689 (Tex. App. - Dallas 2008, no pet.). As a prerequisite to presenting a complaint for appellate review, such an objection must be timely and specifically raised, and a ruling obtained." *Mekeel v. U.S. Bank Nat. Ass'n*, 355 S.W.3d 349, 357 (Tex. App. - El Paso 2011, pet. dism'd) (citing Tex. R. App. P. 33.1(a) [other citations omitted]). Republic L.L.C. did not object to the verifications at the district court level and thus waived any alleged error.

**IV. Republic L.L.C.'s working interest ownership *is* relevant**

Republic L.L.C. contends that its lawsuit "does not concern Republic's working interest ownership in the Satellite Well, but instead concerns a breach of the PHA," thus its working interest ownership is "irrelevant." Brief, p. 22-23. Republic L.L.C. does not cite a single case for this proposition, nor does it distinguish the plethora of authority holding that an ownership interest is necessary to recover damages.

10

Moreover, the PHA would not exist without the HI 115 Well and the production there-from. Under the HI 115 OOA, the parties paid expenses and received revenues (including, logically, any damages) associated with production *according to their participating interest (working interest ownership)* as follows:

Basis of Charge to the Parties. Subject to the other provisions of this Agreement, Operator shall pay all costs incurred under this Agreement, and each Party shall reimburse Operator in proportion to its Participating Interest. (18 RR Pls.' Ex. 190-0008)

Statements and Billings. Operator shall bill Non-Operators … for their proportionate share of the Joint Account…. (42 RR Defs.' Ex. 756-0286-0287)

"Joint Account" shall mean the account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be shared by the Parties. (42 RR Defs.' Ex. 756-0286)

*See also* (46 RR Defs.' Ex. 0773-2058 *et seq.*) (Invoices pertaining to production under the PHA setting forth charges and credits to the HI 115 working interest owners based upon their ownership interest).

Contrary to Republic L.L.C.'s position, the case law is clear that without an ownership interest or suit in a representative capacity, there can be no standing and/or capacity. *See Fuqua v. Taylor*, 683 S.W.2d 735, 739 (Tex. App. - Dallas 1984, writ ref'd n.r.e.) ("It would violate equitable principles to allow appellees, who owned but thirty-one percent of the working interest, to recover one hundred percent of the trust income…. [W]e remand … for a determination of the amount of each individual appellee's recovery, to be calculated according to the percentage

11

of the entire working interest … owned by each appellee."); *Denman v. SND Operating, L.L.C.,* No. 06-04-00061-CV, 2005 WL 2316177, at \*8 (Tex. App. - Texarkana Sept. 23, 2005, no pet.) ("The Denmans … have standing to sue for discharges of hydrocarbons and for damages…***during their ownership***.") (Emphasis added.) Republic L.L.C.'s lack of working interest ownership is not only relevant; it is determinative and establishes that a take-nothing judgment should be rendered.

## V. Defendants did not waive any points of error

Republic L.L.C. alleges that since Defendants "make no claim of charge error" the Defendants "are bound by the charge on appeal" and "because the jury was not requested to consider damages in the context of Republic's working interest ownership," Defendants' "capacity challenge can have no merit."[5] Brief, p. 25-26. Although Republic L.L.C.'s allegation is unclear, and ***no*** cases are cited that are even peripherally on point, Defendants are not required to claim charge error as they contend that the district court erred, *inter alia*, in denying Defendants' JNOV and Motion to Modify Judgment. Even if Defendants had to claim charge error, they did not waive any complaints.

---

[5] Republic L.L.C. fails to note that it has no pleading to support a 100% damage award and that if the Modified Judgment is not reversed and rendered, damages will be awarded to non-parties. These issues were preserved for appeal as well and not addressed by Republic L.L.C.

12

To the extent Republic L.L.C. suggests that it was incumbent upon Defendants to submit a damage question to preserve Defendants' capacity complaint on appeal,[6] Brief, p. 25-26, Republic L.L.C. is mistaken for many reasons.[7]

First, the issue of Republic L.L.C.'s working interest ownership relates to standing, not capacity. *See Shipley v. Unifund CCR Partners,* 331 S.W.3d 27, 29 (Tex. App. - Waco 2010, no pet.) ("We find that without evidence of any ownership interest or title in the account that Unifund CCR Partners does not have standing to bring this suit and that the trial court did not have subject matter jurisdiction over the action."); *Denman,* No. 06-04-00061-CV, 2005 WL 2316177, at *8 (Accord). Moreover, "standing is a component of subject matter jurisdiction and can never be waived." *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.,* 408 S.W.3d 645, 650-51 (Tex. App. - Dallas 2013, pet. denied) (citing *Austin Nursing Ctr. Inc. v. Lovato,* 171 S.W.3d 845, 849 (Tex. 2005)).

Second, even if ownership is a capacity issue, Defendants properly filed verified denials. As such, the burden shifted to Republic L.L.C. to obtain a jury

---

[6] Incredibly, Republic L.L.C. argues the opposite position on page 26 of its Brief stating that "standing and capacity are legal questions which … should not have been argued to the jury" and on page 34 that "because Defendants do not challenge the jury charge, the sufficiency of the evidence must be reviewed in light of the charge submitted."

[7] Defendants also objected to the submission of the damage question on the bases of 1) no evidence of damages due to the fact that Republic L.L.C. did not own an interest in the HI 115 Well, 2) lack of standing, and 3) lack of capacity. (7 RR 81-83) (7 RR 86-87). All objections were overruled. (7 RR 77-87).

13

finding on the issue as stated in *Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124, 141 (Tex. App. - Fort Worth 2011, pet. struck):

> [I]f a verified denial is filed, the issue of the plaintiff's capacity to sue is controverted, and ***the plaintiff bears the burden of proving at trial that he is entitled to recover in the capacity in which he has filed suit. As the party with the burden of proof then, it is incumbent upon the plaintiff to obtain a jury finding on this particular issue.***

(Emphasis added.)

Third, prior to submission of the case to the jury, the district court held as ***a matter of law*** that Republic L.L.C. did not file suit as operator or in any representative capacity, and denied the request for leave to file a Fifth Amended Petition. (5 RR 128); (6 RR 119). As such, the issue of capacity was already decided and Defendants did not waive any complaint. *See Byrd v. Estate of Nelms*, 154 S.W.3d 149, 160 (Tex. App. - Waco 2004, pet. denied) ("Any question concerning the Nelms Partnership's capacity to sue was determined by the trial court as a matter of law .... Issues of capacity to sue are questions of law. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928–29 (Tex. 1998). Issues found as a matter of law should not be submitted to the jury. *Star Enterprise v. Marze,* 61 S.W.3d 449, 459 (Tex. App. - San Antonio 2001, pet. denied) (citing *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222–23 (Tex.1992))."

The lack of Republic L.L.C.'s working interest was also established as a matter of law and not controverted by Republic L.L.C. either in the district court or

14

on appeal. A fact issue that is established with uncontroverted evidence and is not in dispute should not be submitted to the jury. *Bank of El Paso,* 847 S.W.2d at 223.

Fourth, *as admitted by Republic L.L.C. in its brief*, standing and capacity should not be submitted to the jury. *Rhey v. Redic*, 408 S.W.3d 440, 463 (Tex. App. - El Paso 2013, no pet.) ("To the extent Rhey's argument is related to the standing and capacity …, both issues are legal questions which would not be submitted to the jury.") Brief, p. 26.

Lastly, Defendants properly preserved error by objecting to the damage question (7 RR 81-83) (7 RR 86-87), filing a Motion for Directed Verdict (CR 841-846) (6 RR 5), JNOV (CR 888-903) and a Motion for New Trial (CR 1122-1150). *See United Parcel Serv., Inc. v. Tasdemiroglu,* 25 S.W.3d 914, 916 (Tex. App. - Houston [14th Dist.] 2000, pet. denied) (citing *Cecil v. Smith,* 804 S.W.2d 509, 510–11 (Tex. 1991)). ("To preserve a no evidence or matter of law point for appeal, a party must raise the issue through one of the following: (1) a motion for directed verdict, (2) a motion for JNOV, (3) an objection to the submission of the question to the jury, (4) a motion to disregard the jury's answer to a vital fact question, or (45) a motion for new trial.") Moreover, Defendants filed a Motion to Modify Judgment (CR 1050-1070) and "[m]otions to modify preserve error for appellate review of an erroneous damage award in a judgment." *Solares v.*

15

*Solares*, 232 S.W.3d 873, 881 (Tex. App. - Dallas 2007, no pet.) (citing, *Harmon v. 1401 Elm Street Condominium Ass'n,* 139 S.W.3d 411, 416–17 (Tex. App. - Dallas 2004, no pet.)).

## PRAYER

Defendants Dynamic and W&T Offshore pray that the Court of Appeals reverse and render judgment that Republic L.L.C. takes nothing, or alternatively that Republic L.L.C. be awarded damages of $32,971.73 and attorney's fees through trial of $125,000. Defendants also pray for such other relief to which they may be justly entitled.

## APPENDIX

1. Attachment to the HI 115 OOA indicating that the operator for the lease effective July 16, 2010 is Rooster Petroleum, LLC (52 RR Defs.' Ex. 915-0094)

2. *Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916 (2014)

3. *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242 (2005)

4. *Shipley v. Unifund CCR Partners,* 331 S.W.3d 27 (2010)

Respectfully submitted,

GIEGER, LABORDE &  LAPEROUSE, L.L.C.
KENNETH H. LABORDE
Texas State Bar No. 11786070
klaborde@glllaw.com
DANIEL G. RAUH
drauh@glllaw.com
Louisiana State Bar No. 27280

16

(*Pro Hac Vice*)
CHARLOTTE A. FIELDS
cfields@glllaw.com
Texas State Bar No. 24032175
Gieger, Laborde & Laperouse,
1177 West Loop South, Suite 750
Houston, Texas 77027
Telephone:  (832) 255-6000
Facsimile:  (832) 255-6001

COUNSEL FOR DEFENDANT
DYNAMIC OFFSHORE RESOURCES NS,

- *AND-*

JOHNSON DELUCA KURISKY &
GOULD
A Professional Corporation
BRADLEY L. DELUCA
bdeluca@jdkglaw.com
Texas Bar No. 05653800
BRIGID D. ASHCRAFT
bashcraft@jdkglaw.com
Texas Bar No. 09193167
4 Houston Center
1221 Lamar, Suite 1000
Houston, Texas 77010
(713) 652-2525 – Telephone
(713) 652-5130 – Facsimile

COUNSEL FOR DEFENDANT
W&T OFFSHORE, INC., successor by
merger of OFFSHORE SHELF, L.L.C.

# CERTIFICATE OF COMPLIANCE

As required by Rule 9.4, Texas Rules of Appellate Procedure, the undersigned certifies that this brief contains  3814  words, exclusive of the portions described in Rule 9.4(i)(1).

*/s/ Kenneth H. Laborde*
Kenneth H. Laborde

*/s/ Bradley L. DeLuca*
Bradley L. DeLuca

# CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2015, the Reply Brief of Cross-Appellants Dynamic Offshore Resources NS and W&T Offshore, Inc. Successor By Merger of Offshore Shelf was electronically filed with the Clerk of Court for The First Court of Appeals by using the EFSP-EFM System. Participants in this case who are registered EFSP-EFM System users will be served electronically by the EFSP-EFM System. Other participants will be served by e-mail in accordance with TEX. R. APP. P. 9.5(e).

KB BATTAGLINI
Texas State Bar No. 01918060
kbattaglini@strongpipkin.com
JOHN G. BISSELL
Texas State Bar No. 02356000
jbissell@strongpipkin.com
Strong Pipkin Bissell & Ledyard, L.L.P.
4900 Woodway Drive, Suite 1200
Houston, Texas 77056
Telephone: (713) 651-1900
Facsimile: (713) 651-1920

**Counsel for Plaintiffs/Appellants Republic Petroleum, and Republic Petroleum Partners, L.P.**

18

KENNETH H. LABORDE
Texas State Bar No. 11786070
klaborde@glllaw.com
DANIEL G. RAUH
Louisiana State Bar No. 27280 (*PHV*)
drauh@glllaw.com
CHARLOTTE A. FIELDS
Texas State Bar No. 24032175
cfields@glllaw.com
Gieger, Laborde & Laperouse,
1177 West Loop South, Suite 750
Houston, Texas 77027
Telephone:  (832) 255-6000
Facsimile:  (832) 255-6001
**Counsel for Defendant/Cross-Appellant Dynamic Offshore Resources NS**

/s/ Kenneth H. Laborde
Kenneth H. Laborde

JOHNSON DELUCA KURISKY &
GOULD
A Professional Corporation
BRADLEY L. DELUCA
bdeluca@jdkglaw.com
Texas Bar No. 05653800
BRIGID D. ASHCRAFT
bashcraft@jdkglaw.com
Texas Bar No. 09193167
4 Houston Center
1221 Lamar, Suite 1000
Houston, Texas 77010
(713) 652-2525 – Telephone
(713) 652-5130 – Facsimile
**Counsel for Defendant W&T Offshore, Inc., Successor by Merger of Offshore Shelf, L.L.C.**

*/s/ Bradley L. DeLuca*
Bradley L. DeLuca

19

L.    Pipeline Ownership in Segment #17167 (OCS-G 28359):

|  | WI |
|---|---|
| Rooster Oil & Gas, LLC | 23.00000% |
| PROBE HIGH ISLAND 115 LTD. | 18.54486% |
| PROBE RESOURCES US LTD. | 30.95514% |
| Republic Petroleum Partners, LP | 19.10000% |
| Sierra Pine Resources International, Inc. | 00.62500% |
| DBL Oil & Gas, LLC | 00.62500% |
|  | 100.00000% |

III.    The Operator for the Lease shall be:

Rooster Petroleum, LLC

IV.    Notification addresses and titles of the designed representatives are as follows:

**Republic Petroleum, LLC**
2425 West Loop South, Suite. 200
Houston, Texas 77027
Attn: Scott Stanford
Telephone: (713) 297-9180
Fax: (713) 297-8864
Email: sstanford@comcast.net

**Blue Dolphin Petroleum Company**
801 Travis , Suite 2100
Houston, Texas 77002
Attn: Ivar Siem
Telephone: (713) 568-4730
Fax: (713) 227-7626
Email: ivar.siem@blue-dolphin.com

**Sierra Pine Resources International, Inc.**
110 Cypress Station Drive, #155
Houston, Texas 77090
Attn: Bruce Ganer
Telephone: (713) 297-8864
Fax: (713) 297-8864
Email: BLGaner@aol.com

**PROBE RESOURCES US LTD.**
24 Waterway, Suite 1450
The Woodlands, Texas 77380
Attn: Roger B. Souders
Telephone: (281) 210-1173
Fax: (281) 210-1193
Email:rsouders@probe-resources.com

**PROBE HIGH ISLAND 115 LTD.**
24 Waterway, Suite 1450
The Woodlands, Texas 77380
Attn: Roger B. Souders
Telephone: (281) 210-1173
Fax: (281) 210-1193
Email: rsouders@probe-resources.com

**Republic Petroleum Partners, LP**
2425 West Loop South, Suite 200
Houston, Texas 77027
Attn: Scott Stanford
Telephone: (713) 297-9180
Fax: (713) 297-8864
Email: ssstanford@comcast.net

**Rooster Oil & Gas, LLC**
16285 Park Ten Place, Suite 120
Houston, Texas 77084
Attn: Kenneth F. Tamplain, Jr.
Telephone: (713) 574-7558
Fax: (832) 772-6314
Email: ktamplain@roosterpetroleum.com

**Rooster Petroleum, LLC**
16285 Park Ten Place, Suite 120
Houston, Texas 77084
Attn; Kenneth F. Tamplain, Jr.
Telephone: (713) 574-7558
Fax: (832) 772-6314
Email: ktamplain@roosterpetroleum.com

**DBL Oil & Gas, LLC**
8427 E. Copper Village Dr.
Houston, Texas 77095
Attn: Tod Darcey
Telephone: (281) 728-8894
Email: tdarcey@darceyoilandgas.com

V.    Permitted Encumbrances:

A.    A 1% of 8/8ths overriding royalty interest in favor of Leopard Energy and Trading, Inc. (Leopard ORRI), specifically limited to production from the High Island 115, B-1 ST2 completion in the Lower Cris R Formation found at a depth of 16,862' measured depth, only per the Bonding Support Agreement dated August 11, 2006 by and between Republic Petroleum, LLC and Leopard Energy and Trading, Inc. (This burden affects all parties under this Operating Agreement).

HI 115 Exhibit "A" to Second Amendment to OOA

RP034889

DEFENDANTS' TRIAL EXHIBIT
0915-0094

451 S.W.3d 916
Court of Appeals of Texas,
Houston (14th Dist.

Jamie Genender and Critter Stuff, LLC, Appellants
v.
USA Store Fixtures, LLC, Appellee

NO. 14–14–00048–CV | Opinion filed December 23, 2014.

**Synopsis**
**Background:** Seller filed petition against buyer and buyer's owner, arising out of reversal of charge on buyer's credit card for payment of used shelving purchased from seller. The Justice Court entered take-nothing judgment against seller, and seller appealed. Following trial de novo, the County Court at Law No. 1, Harris County, awarded seller damages in amount of $2,303.42, and attorney fees in amount of $38,000 for trial, $20,000 for appeal to Court of Appeals, and $20,000 for appeal to Supreme Court. Buyer and owner appealed.

**Holdings:** The Court of Appeals, Sharon McCally, J., held that:

[1] county court had subject matter jurisdiction over claim for breach of contract;

[2] evidence supported jury's finding that defendants breached contract to purchase shelving;

[3] seller's written "quote" to buyer was not evidence of seller's "presentment" to buyer of demand for payment on contract, as prerequisite to seller's right to recover attorney fees on claim;

[4] notification to seller of reversal of charge on buyer's credit card that was used to purchase shelving was not "presentment";

[5] documents from seller's merchant account provider reflecting communications between provider, buyer, and seller did not include presentment of demand for payment on contract;

[6] seller's discovery responses did not constitute "presentment" of claim;

[7] settlement negotiations between buyer and seller did not constitute "presentment";

[8] affidavit of seller's attorney filed after jury reached verdict was not evidence of presentment; and

[9] once jury returned verdict on claim for breach of contract, trial court should not have reopened record to allow evidence on disputed issue of presentment.

Affirmed as modified.

West Headnotes (19)

**[1]** **Justices of the Peace**
&#128273;Evidence

Seller of used shelving was presumed to have orally pleaded claim for breach of contract against buyer in justice court and, thus, county court had subject matter jurisdiction over claim in de novo trial; seller filed petitions in justice court against buyer and buyer's owner asserting that defendants were legally indebted to it and that seller reserved right to plead further orally upon trial of matter, and buyer did not rebut presumption of oral pleading. Tex. R. Civ. P. 525 (Repealed).

Cases that cite this headnote

**[2]** **Justices of the Peace**
&#128273;Evidence

The presumption that a claim was orally pleaded in the justice court, for the purposes of determining whether the county court has subject matter jurisdiction over the claim upon a trial de novo, is rebuttable. Tex. R. Civ. P. 525 (Repealed).

Cases that cite this headnote

[3] **Justices of the Peace**
🔑Evidence

The lack of a notation as to an orally pleaded claim in the justice court's docket does not rebut the presumption of oral pleading, for the purposes of determining whether the county court has subject matter jurisdiction over the claim upon trial de novo. Tex. R. Civ. P. 525 (Repealed).

Cases that cite this headnote

[4] **Consumer Credit**
🔑Credit Cards
**Sales**
🔑Excuses for default or delay

Evidence supported jury's finding that buyer and buyer's owner failed to comply with agreement to purchase used shelving from seller, as required to support seller's claim for breach of contract, arising out of buyer's submission of dispute with credit card company that resulted in company reversing charge, where buyer agreed to purchase shelves, accepted shelves, and then refused to pay for shelves, and fact that credit card company reversed charge had no bearing on buyer's legal obligation to pay for shelves. Tex. Bus. & C. Code § 2.607(a).

Cases that cite this headnote

[5] **Costs**
🔑Contracts

"Presentment," as a prerequisite to an award of attorney fees on a claim for breach of contract, is a demand or request for payment or performance of a contract, whether written or oral. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[6] **Costs**
🔑Contracts

No particular form of presentment of a demand for performance or payment of a contract, in order to recover attorney fees on a claim for breach of contract; however, merely filing suit for a breach of contract, by itself, does not constitute "presentment." Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[7] **Costs**
🔑Form and requisites of application in general
**Costs**
🔑Evidence as to items

The claimant bears the burden of both pleading and proving presentment of a demand for performance or payment on a contract, as a prerequisite to the recovery of attorney fees on a claim for breach of contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[8] **Costs**
🔑Contracts

The purpose of the presentment requirement is to allow the party against whom the claim for breach of contract is asserted an opportunity to pay it or tender performance within 30 days after they have notice of the claim without incurring an obligation for attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[9]
**Costs**
🔑Duties and proceedings of taxing officer

Generally, presentment of a claim for breach of contract, as a prerequisite to the recovery of attorney fees on the claim, is an issue of fact. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[10]
**Costs**
🔑Duties and proceedings of taxing officer

When the issue of the amount of attorney's fees is found by the jury without a request for a jury finding on the issue of presentment of demand for payment or performance of the contract to the defendant, presentment is deemed found. Tex. Civ. Prac. & Rem. Code Ann. § 38.001; Tex. R. Civ. P. 279.

Cases that cite this headnote

[11]
**Appeal and Error**
🔑Allowance or disallowance of costs and fees

An award of attorney's fees on a claim for breach of contract must be reversed if there is no evidence of presentment of the demand for payment or performance of the contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[12]
**Costs**
🔑Vendor and purchaser; sales

Seller's written "quote" to buyer on price for used shelving was not evidence of seller's "presentment" to buyer of demand for payment on contract, as prerequisite to seller's right to recover attorney fees on claim after buyer disputed charge for shelves on credit card with credit card company, resulting in reversal of

charge, where quote was prepared several weeks before buyer agreed to purchase any shelving, before any contract was formed, and quote did not reflect parties' actual agreement as to amount of shelving and cost of shipping. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[13]
**Costs**
🔑Evidence as to items

Evidence that the plaintiff sent an invoice to the defendant can satisfy a plaintiff's burden to prove presentment of a demand for performance or payment on a contract, as a prerequisite to an award of attorney fees on a claim for breach of contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[14]
**Costs**
🔑Vendor and purchaser; sales

Notification to seller of reversal of charge on buyer's credit card that was used to purchase used shelves from seller was not "presentment" by seller of demand to buyer for payment on contract to purchase shelves, as prerequisite to seller's right to recover attorney fees on claim for breach of contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[15]
**Costs**
🔑Vendor and purchaser; sales

Documents from seller's merchant account provider reflecting communications between provider, buyer, and seller contained no demand by seller for payment on contract to purchase used shelving, and thus, did not constitute

"presentment" of claim, as prerequisite to seller's right to recover attorney fees on claim against buyer for breach of contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[16]    **Costs**
🔑Vendor and purchaser; sales

Seller's discovery responses did not constitute demand for payment on contract to purchase used shelving from seller, and thus, did not constitute "presentment" of claim, as prerequisite to recovering award of attorney fees on a claim for breach of contract against buyer. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[17]    **Costs**
🔑Vendor and purchaser; sales

Settlement negotiations between buyer and seller of used shelving with respect to buyer's failure to pay for shelving did not constitute "presentment" of demand for payment on contract, as prerequisite to seller's right to recover attorney fees on claim for breach of contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[18]    **Costs**
🔑Contracts

Evidence that the parties to a contract participated in settlement negotiations, without more, is no evidence of "presentment" of a demand for payment or performance on the contract, as a prerequisite to the non-breaching party's right to recover attorney fees on a claim for breach of contract, because it does not satisfy

the purpose of the presentment requirement to provide the defendant with the opportunity, by undertaking specific action, to avoid paying attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

Cases that cite this headnote

[19]    **Judgment**
🔑Basing motion on records of case

On used shelving buyer's motion to disregard jury's finding on issue of attorney's fees and buyer's amended motion for judgment notwithstanding verdict (JNOV), in seller's breach of contract action, trial court improperly reopened evidence on a controverted matter when it considered affidavit submitted by seller's attorney averring that he made demand for payment of invoice for shelving purchased by buyer to buyer's counsel, where affidavit was filed after jury reached verdict, and motions and the affidavit concerned parties' dispute as to whether seller had made presentment of its breach of contract claim, which was prerequisite to recovering attorney fees. Tex. Civ. Prac. & Rem. Code Ann. § 38.001; Tex. R. Civ. P. 270.

Cases that cite this headnote

**\*919** On Appeal from the County Civil Court at Law No. 1, Harris County, Texas, Trial Court Cause No. 1016718. Debra I. Mayfield, Judge.

**Attorneys and Law Firms**

Cameron Weir, Jan Woodward Fox, Houston, TX, for Appellants.

Jerrad D. Bloome, Houston, TX, for Appellee.

Panel consists of Justices McCally, Brown, and Wise.

**OPINION**

Sharon McCally, Justice

Appellee USA Store Fixtures, LLC sued appellants Jamie Genender and her business Critter Stuff, LLC in justice court after Genender successfully obtained a chargeback on her credit card related to her purchase of $2,303.42 in used shelving from Store Fixtures. Store Fixtures appealed a take-nothing judgment from the justice court to the county court, which held a trial de novo. A jury awarded Store Fixtures damages of $2,303.42 and attorney's fees of $38,000 for trial, $20,000 for an appeal to the court of appeals, and $20,000 for an appeal to the Supreme Court of Texas. In three issues, appellants contend the county court lacked jurisdiction over Store Fixtures' breach of contract claim, the evidence is legally insufficient, and Store Fixtures is not entitled to attorney's fees because it failed to plead and prove presentment of its claim.

We hold that the trial court had jurisdiction over Store Fixtures' breach of contract claim and the evidence is legally sufficient to support the jury's finding on that claim, but Store Fixtures failed to prove presentment. Accordingly, we modify the trial court's judgment to delete the award of attorney's fees and affirm the trial court's judgment as modified.

**I. BACKGROUND**

Using a credit card, Genender purchased some used shelving from Store Fixtures for Genender's business. Store Fixtures shipped the shelving to Genender in Wisconsin. But she was disappointed with the quantity and quality of the shelving she received and with Store Fixtures' response to her concerns, so she filed a dispute with her credit card company that resulted in a chargeback to Store Fixtures. Store Fixtures sued appellants in justice court; all parties were pro se. After a bench trial, the justice court signed a take-nothing judgment in appellants' favor, and Store Fixtures appealed to the county court. The parties hired attorneys and ultimately proceeded to a de novo jury trial with each side asserting claims for breach of contract and attorney's fees.

The only issues submitted to the jury were whether any party failed to comply with the agreement, and if so, the amounts of damages and attorney's fees. The jury found that appellants failed to comply with **\*920** the agreement,

Store Fixtures did not fail to comply with the agreement, Store Fixtures suffered damages of $2,303.42, and Store Fixtures' reasonable and necessary attorney's fees were $38,000 for preparation and trial, $20,000 for an appeal to the court of appeals, and $20,000 for an appeal to the Supreme Court of Texas. The county court signed a final judgment consistent with the jury's verdict. This appeal followed.

**II. SUBJECT MATTER JURISDICTION**

In their first issue, appellants contend the county court's judgment is void because the county court lacked subject matter jurisdiction over the only claim and basis for attorney's fees supporting the judgment. Appellants argue that Store Fixtures did not plead a breach of contract claim in the justice court, and Store Fixtures' contract claim was a "new ground of recovery" pleaded for the first time on appeal to the county court. *See* Tex.R. Civ. P. 574a, 50 Tex. B.J. 868 (1987, repealed 2013) (on appeal from justice court, "no new ground of recovery shall be set up by the plaintiff").

Store Fixtures contends that it pleaded a breach of contract claim in the justice court because Store Fixtures reserved the right to plead orally and, at the justice court trial, Store Fixtures "sought to recover the total invoice amount under the theory that Genender and Critter Stuff had breached the contract by not paying for the shelving."

First we will review the relevant proceedings and evidence in the record. Then we overrule appellant's issue because appellants failed to rebut the presumption that Store Fixtures orally pleaded its breach of contract claim in the justice court.

**A. Background and Evidence**

Store Fixtures, acting through its president,[1] filed two petitions in justice court. The petition naming Genender as a defendant alleged as follows:

> That the defendant is legally indebted to the plaintiff in the sum of $10,000.00 based upon the following facts: Defendant, Jaimie Michele Genender, purposefully intended to defraud USA Store Fixtures LLC from financial gain by refusing payment on her credit card. Defendant also acted outside

of her title and personally defamed and slandered this company in writing. Invoice $2,303.42 damages for slander $7,697.58.

The petition naming Critter Stuff as a defendant alleged as follows:

> That the defendant is legally indebted to the plaintiff in the sum of $10,000.00 based upon the following facts: Defendant, Jamie Michele Genender, purposefully intended to defraud USA Store Fixtures LLC from financial gain by refusing payment on her credit card. Defendant also slandered and defamed this company in writing. Invoice amount $2,303.42 plus damages for slander and defamation.

Both petitions stated, "THAT plaintiff reserves the right to plead further orally upon trail [sic] of this matter." *See* Tex.R. Civ. P. 525, 3 Tex. B.J. 607 (1940, repealed 2013) (in justice court, "[t]he pleadings shall be oral, except where otherwise specially provided").

After Store Fixtures appealed to the county court and retained counsel, it filed an amended petition asserting claims for **\*921** breach of contract, negligent misrepresentation, fraud, fraud in the inducement, and quantum meruit. Store Fixtures also sought attorney's fees. Appellants filed counterclaims for breach of contract and violations of the Deceptive Trade Practices—Consumer Protection Act (DTPA), Tex. Bus. & Com.Code Ann. subch. E. Appellants also sought attorney's fees.

Store Fixtures filed a plea to the jurisdiction and motion to dismiss all of appellants' counterclaims under former Rule 574a. The rule provided,

> Either party may plead any new matter in the county or district court which was not presented in the court below, but no new ground of recovery shall be set up by the plaintiff, nor shall any set-off or counterclaim be set up by the defendant which was not pleaded in the court below.

Tex. R Civ. P. 574a, 50 Tex. B.J. 868 (1987, repealed

2013). Store Fixtures alleged dismissal was the proper remedy because the county court lacked subject matter jurisdiction over appellants' newly pleaded counterclaims.[2] Appellants responded that severance was the proper remedy[3] and also requested severance of Store Fixtures' newly pleaded claims of breach of contract, quantum meruit, fraudulent inducement, and negligent misrepresentation. The county court granted partial relief to both sides, ordering severance of Store Fixtures' negligent misrepresentation claim and appellants' DTPA claim. At the de novo trial, only the contract claims were tried, along with the amounts of attorney's fees.

### B. Analysis

[1]Regardless of whether Store Fixtures alleged a breach of contract claim in its written petitions in justice court, the law recognizes a presumption that Store Fixtures orally pleaded its breach of contract claim in justice court. *See Gordon v. Zoes,* 125 S.W.2d 1049, 1049–50 (Tex.Civ.App.—Galveston 1939, no writ) (holding that the county court's judgment was not void based on an allegation that the plaintiff brought a new cause of action not pleaded in justice court; "While plaintiff filed certain written pleadings in the justice court, he expressly reserved the right in said pleadings to plead orally on the trial of the case. It is uniformly held in this State that in cases originating in the justice court, pleadings may be either oral or written, or partly oral and partly written. In the absence of a showing to the contrary, it will be presumed that said written pleadings were supplemented by such oral amendments as cured any defects therein, and that such pleadings as amended supported the judgment rendered by the trial court."); *Garcia v. Rendon,* 59 S.W.2d 881, 881 (Tex.Civ.App.—San Antonio 1933, no writ) ("If the oral plea made by appellee was not pleaded in the justice's court, appellant should have shown it. The mere fact that the justice of the peace did not note the oral pleadings **\*922** did not prove that they were not made.").[4] This presumption exists because the rules specifically require oral pleadings in the justice court. *See* Tex.R. Civ. P. 525, 3 Tex. B.J. 607 (1940, repealed 2013) ("The pleadings shall be oral ...").[5]

[2]The presumption is rebuttable. *See Gordon,* 125 S.W.2d at 1049–50; *Garcia,* 59 S.W.2d at 881. For example, a statement regarding the oral pleadings may be noted on the justice court's docket. *See* Tex.R. Civ. P. 525, 3 Tex. B.J. 607 (1940, repealed 2013) ("The pleadings shall be oral ... but a brief statement thereof may be noted on the docket ...."); *see also* Subcomm. on Interpretation of Rules of Civil Procedure, State Bar of Tex., Op. 27–a, 5 B.J. 287 (1942) (noting that this statement may be necessary because "it may become important to show

what the old pleadings were with ... contentions that a new cause of action has been set up for the first time in the county court").

[3]The record here contains no such notation, but the lack of a notation does not rebut the presumption of oral pleading. *See Gordon,* 125 S.W.2d at 1049–50; *Garcia,* 59 S.W.2d at 881; *Amarillo Commercial,* 140 S.W. at 378. Nor does the record contain any evidence that Store Fixtures did not orally plead a breach of contract claim in the justice court.[6] Because appellants did not rebut the presumption of oral pleading, we presume that Store Fixtures orally pleaded a breach of contract claim in the justice court, and therefore, the claim was not a new ground of recovery in the county court.

Appellants' first issue is overruled.

### III. SUFFICIENCY OF THE EVIDENCE

[4]Appellants' second issue is that "there is legally insufficient evidence that Jamie Genender or Critter Stuff breached any contractual duty to USA Store Fixtures." Appellants argue that there is no evidence to support the jury's "yes" answer for each appellant in Jury Question No. 1, which asked, "Did Jamie Genender and/or Critter Stuff fail to comply with the agreement?" Thus, appellants challenge the "breach" element of Store Fixtures' claim and contend that the claim "must be based entirely upon Genender's action in submitting a dispute of the transaction **\*923** through the chargeback process established by her credit card company."

Appellants contend that their "promise to pay was stipulated upon compliance with the Cardholder Agreement" because when Store Fixtures charged Genender's credit card, Store Fixtures sent her an unsigned receipt (Defendant's Exhibit No. 3), which states, "I agree to pay above total amount according to card issuer agreement. (Merchant Agreement if Credit Voucher)."[7] So, because it is undisputed that Store Fixtures lost the credit card dispute due to its "failure to comply" with its merchant account agreement, appellants claim they could not possibly have breached the contract for the sale of the shelving.[8]

Store Fixtures contends that there is evidence of appellants' breach because they agreed to purchase goods, accepted the goods, and ultimately did not pay for the goods. We agree with Store Fixtures.

We find no authority, and appellants have cited none, to suggest that in general (or under any specific circumstances), a buyer has not breached a sale-of-goods contract as a matter of law when a credit card company reverses a charge in favor of the buyer at the buyer's request. In fact, there is authority that a party's obtaining a credit card chargeback does not erase liability for obligations owed. *See CSL Prop. Mgmt. Co. v. Thyssenkrupp Elevator Co.,* No. 01–11–00665–CV, 2013 WL 396252, at \*2, \*6 (Tex.App.—Houston [1st Dist.] Jan. 31, 2013, no pet.) (mem.op.) (upholding summary judgment for the plaintiff on its indemnity claim where the factual basis for part of the claim was the defendant's failure to indemnify an amount reversed by a third party's credit card company). Defendant's Exhibit No. 3 does not conclusively establish that the parties agreed to resolve disputes solely under their credit card companies' chargeback policies. To the extent there was an ambiguity, the jury resolved it in favor of Store Fixtures. *See Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex.1987) (ambiguity in contract creates question of fact for jury).[9]

Store Fixtures adduced evidence that it sent appellants the shelving Genender ordered, that appellants accepted the shelving, and that Genender initiated a chargeback on her credit card, resulting in appellants' failures to pay for the goods accepted.[10] A buyer's failure to **\*924** pay the contract rate for goods accepted constitutes a breach of contract. *See* Tex. Bus. & Com.Code Ann. 2.607(a); *see also Garden Ridge, L.P. v. Advance Int'l, Inc.,* 403 S.W.3d 432, 445 (Tex.App.—Houston [14th Dist.] 2013, pet. denied) (proper to instruct the jury about what constitutes acceptance of goods and about "the UCC's provision that the buyer must pay the contract rate for goods it accepts").[11] Accordingly, the evidence is legally sufficient to support the jury's affirmative answer to Jury Question No. 1.

Appellants' second issue is overruled.

### IV. PRESENTMENT

In their third issue, appellants contend "the county court erred in submitting to the jury and entering judgment on [Store Fixtures'] attorney's fee award because there are no pleadings or legally or factually sufficient evidence of timely presentment." We agree with appellants that there is no evidence to support an implied finding that Store Fixtures presented its claim.

[5] [6]To recover attorney's fees for a breach of contract claim under Section 38.001 of the Texas Civil Practice

and Remedies Code,

> (1) the claimant must be represented by an attorney;
>
> (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
>
> (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

Tex. Civ. Prac. & Rem.Code Ann. § 38.002. Presentment is a "demand or request for payment or performance, whether written or oral." *Gibson v. Cuellar,* 440 S.W.3d 150, 157 (Tex.App.—Houston [14th Dist.] 2013, no pet.) (citing *Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex.1981)). No particular form of presentment is required. *Id.* However, merely filing suit for a breach of contract, by itself, does not constitute presentment. *See Huff v. Fid. Union Life Ins. Co.,* 158 Tex. 433,312 S.W.2d 493, 500 (1958) (addressing predecessor statute).[12]

[7] [8]The claimant bears the burden of both pleading and proving presentment. *See, e.g., Gibson,* 440 S.W.3d at 157 (citing *Ellis v. Waldrop,* 656 S.W.2d 902, 905 (Tex.1983)). "The purpose of the presentment requirement is to allow the party against whom the claim is asserted an opportunity to pay it or tender performance within 30 days after they have notice of the claim without incurring an obligation for attorney's fees." *Id.* (citing *Jones,* 614 S.W.2d at 100).[13]

[9]Generally, presentment is an issue of fact. *See id.* at 157 n.7 (trial court's **\*925** finding of presentment was a finding of fact, not a conclusion of law); *see also France v. Am. Indem. Co.,* 648 S.W.2d 283, 286 (Tex.1983) (trial court erred to conclude that the plaintiff was not entitled to attorney's fees when there was some evidence of presentment; "At the very least, a fact issue was raised here as to presentment."); *cf. Roylex, Inc. v. Avco Cmty. Developers, Inc.,* 559 S.W.2d 833, 838 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ) ("Since the evidence on presentment was conclusive, that issue did not have to be submitted to the jury."); *Turner v. Lubbock Cnty. Hosp. Dist.,* No. 07–96–0272–CV, 1998 WL 3554, at *5–6 (Tex.App.—Amarillo Jan. 6, 1998, no pet.) (not designated for publication) (finding reversible jury charge error because the issue of presentment "should have been submitted to the jury for determination" when the evidence was disputed).

[10] [11]When, as here, the issue of the amount of attorney's fees is found by the jury without a request for a jury finding on the issue of presentment, Rule 279 of the Texas Rules of Civil Procedure operates so presentment is deemed found. *See Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 720 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (deemed finding on presentment); *Atkin v. Cobb,* 663 S.W.2d 48, 53 (Tex.App.—San Antonio 1983, writ dism'd) (same). Appellants now challenge the sufficiency of the evidence to support the deemed finding. *See Serv. Corp. Int'l v. Guerra,* 348 S.W.3d 221, 228–29 (Tex.2011) (deemed findings may be reviewed for sufficiency of the evidence); *see also Adams,* 754 S.W.2d at 720 (legally sufficient evidence supported deemed finding on presentment).[14]

Store Fixtures contends that it proved presentment in a number of ways: (1) by sending appellants an invoice; (2) by making a demand for payment during the credit card dispute; (3) by providing appellants discovery responses showing a claim for breach of contract; and (4) by engaging in settlement negotiations and orally making a demand for payment during those negotiations. We address each contention in turn.

### A. Invoice

[12] [13]Store Fixtures contends that Genender admitted to receiving an invoice **\*926** as well as having the credit card charge reversed, "thus constituting non-payment of the invoice." Evidence that the plaintiff sent an invoice to the defendant can satisfy a plaintiff's burden to prove presentment. *See Gordon v. Leasman,* 365 S.W.3d 109, 116 (Tex.App.—Houston [1st Dist.] 2011, no pet.); *Roylex, Inc.,* 559 S.W.2d at 838. But Store Fixtures cites to Plaintiff's Exhibit No. 1, which is not an "invoice" but rather a "quote" dated April 18, 2011. It is undisputed that this quote was prepared several weeks before appellants agreed to purchase any shelving—before any contract was formed—and it did not reflect the parties' actual agreement as to the amount of shelving and cost of shipping.

Because no contract then existed, Store Fixtures had no breach of contract claim against appellants, and there was no "just amount owed" to Store Fixtures. Accordingly, Plaintiff's Exhibit No. 1 is not evidence of presentment as a matter of law. *See Brainard v. Trinity Universal Ins. Co.,* 216 S.W.3d 809, 817–19 (Tex.2006) (plaintiff's demand for underinsured motorist benefits made before a court signed a judgment on the motorist's liability and damages was not evidence of presentment as a matter of law because at the time of the alleged presentment there was no contractual duty to pay; when there is no contractual duty to pay, there is no "just amount owed" under Section 38.002; reasoning that a contract claim requires the existence of a duty or obligation that the

opposing party has failed to meet); *cf. McNeil v. BMC Software Inc.,* 306 Fed.Appx. 889, 894 (5th Cir.2009) (employee's request that employer promise to pay a bonus that had not yet accrued was not presentment as a matter of law; at the time of the request, there was no "just amount owed" and no "claim" to present; request for a party to meet its future contractual obligations is not a claim for a just amount owed).[15]

**B. During the Credit Card Dispute**

Store Fixtures contends that it presented its breach of contract claim by "inform[ing] the credit card company during the credit card dispute that it would seek legal action if the charges were reversed," and by making a demand for payment "during the entire dispute." Store Fixtures cites Defendant's Exhibits Nos. 26 and 32.

[14]Defendant's Exhibit No. 26 is a one-page document titled "chargeback notification" apparently sent from "merchant services" to Store Fixtures to notify Store Fixtures of the chargeback and explain what Store Fixtures could do to contest the chargeback. This document does not show a demand for payment from Store Fixtures.

[15]Defendant's Exhibit No. 32 consists of about ninety pages of documents from Bank of America Merchant Services, Store Fixtures' merchant account provider. Appellants had requested, among other things, any and all records reflecting "any communications by Chase, Merchant Services, **\*927** and/or the parties." We have reviewed the exhibit. It contains no demand for payment from Store Fixtures.

**C. Discovery Responses**

[16]Store Fixtures contends that it presented its claim by providing appellants "discovery responses," which "show[ed] Plaintiff's claim for breach of contract, the basis of the claim and it[s] claim for damages." Store Fixtures does not cite to the record for this assertion nor describe in any way how a demand for payment was made through its "discovery response."[16]

**D. Settlement Negotiations**

[17] [18]Finally, Store Fixtures contends that it orally presented its claim to appellants' counsel during settlement negotiations. As evidence, Store Fixtures first cites to Plaintiff's Exhibit No. 6, which consists of copious billing records from Store Fixtures' lawyers.

Store Fixtures refers to an entry for July 12, 2012: "confer with opposing counsel re: potential to resolve." Evidence that the parties participated in settlement negotiations, without more, is no evidence of presentment. *See Border Gateway, L.L.C. v. Gomez,* No. 14–10–01266–CV, 2011 WL 4361485, at \*9 (Tex.App.—Houston [14th Dist.] Sept. 20, 2011, no pet.) (mem.op.). Such evidence is insufficient to prove presentment because it does not satisfy the purpose of the presentment requirement: to provide the defendant with "the opportunity, by undertaking specific action, to avoid paying attorney's fees." *Belew v. Rector,* 202 S.W.3d 849, 856–57 (Tex.App.— Eastland 2006, no pet.) (evidence that counsel "had some settlement discussions" was insufficient).

[19]Next, Store Fixtures refers to an affidavit from its counsel, Jerrad Bloome, where he testified that he made a demand for payment of the invoice amount to appellants' counsel on July 12, 2012. However, Store Fixtures filed this affidavit after the jury had reached a verdict, only in response to appellants' motion to disregard the jury's answer to Jury Question No. 5 concerning attorney's fees. Appellants objected to the trial court's consideration of the affidavit,[17] but the trial court overruled the objection.

Although a trial court has discretion to permit additional evidence to be offered at any time, "in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." Tex.R. Civ. P. 270. Here, the issue of presentment was controverted. Appellants had pleaded in their answer that Store Fixtures failed to present its claim, and appellants objected during trial to the submission of Jury Question No. 5 because Store Fixtures had failed to offer any evidence of presentment. After the jury's verdict, appellants filed a motion to disregard the jury's finding on attorney's fees and an amended JNOV on the issue because there was no evidence of presentment. At the hearing on the post-verdict motions, after the trial court had overruled appellants' objection to the affidavit, the trial court allowed appellants to make a record about the lack of presentment. Counsel for appellants, **\*928** Jan Fox, testified that she had no records of any July 12 conversation with Bloome, that it would have been her practice to document such a conversation, and that no such conversation occurred based on her records.[18]

Under these circumstances, the trial court abused its discretion by reopening the evidence on a controverted matter after dismissing the jury, and the trial court should have granted appellants' motion to disregard the jury's finding on the issue of attorney's fees and entered judgment accordingly. *See Helping Hands Home Care,*

*Inc. v. Home Health of Tarrant Cnty., Inc.,* 393 S.W.3d 492, 516–17 (Tex.App.—Dallas 2013, pet. denied) (trial court correctly granted JNOV on attorney's fees and refused to reopen the case for evidence of presentment because "the evidence is insufficient to show Specialties met the procedural requirements for the award"); *see also Univ. of Tex. at Austin v. Ables,* 914 S.W.2d 712, 718 (Tex.App.—Austin 1996, no writ) (trial court abused its discretion under Rule 270 by considering evidence about the amount of attorney's fees after the jury's verdict; rendering take-nothing judgment on attorney's fees), *cited with approval in Hatfield v. Solomon,* 316 S.W.3d 50, 67 (Tex.App.—Houston [14th Dist.] 2010, no pet.).

Because there was no evidence before the jury to support a deemed finding that Store Fixtures presented its claim to appellants, we sustain appellants' third issue.[19]

Appellant's first and second issues are overruled, but appellants' third issue is sustained. We modify the trial court's judgment to delete the award of attorney's fees—in particular, the following paragraph:

> It is hereby ORDERED that Jamie Michele Genender and Critter Stuff, L.L.C., jointly and severally, pay to USA Store Fixtures the amount of $38,000, representing the reasonable and necessary attorneys' fees in this case and a contingent award of attorneys' fees in the amount of $20,000 if this case is appealed to the Court of Appeals, and $20,000 if this case is appealed to the Supreme Court of Texas.

We affirm the trial court's judgment as modified.

### V. CONCLUSION

Footnotes

[1]  *See* Tex. Gov't Code Ann. 27.031(d) ("A corporation need not be represented by an attorney injustice court.").

[2]  *See Hatmaker v. Farmers Tex. Cnty. Mut. Ins. Co.,* No. 14–98–00552–CV, 1999 WL 459788, at *3 (Tex.App.—Houston [14th Dist.] July 8, 1999, no pet.) (not designated for publication); *Kramek v. Stewart,* 648 S.W.2d 399, 401–02 (Tex.App.—San Antonio 1983, no writ); *Tex. Co. v. Henderson,* 154 S.W.2d 911, 911 (Tex.Civ.App.—El Paso 1941, no writ); *Racugno v. Hanovia Chem. & Mfg. Co.,* 110 S.W.2d 249, 250 (Tex.Civ.App.—Fort Worth 1937, no writ); *see also Neal v. Beck Funeral Home,* 131 S.W.2d 778, 780–81 (Tex.Civ.App.—Fort Worth 1939, writ dism'd).

[3]  *See New Wave Props., Inc. v. Wikoff,* No. 13–11–00762–CV, 2012 WL 2929623, at *3 (Tex.App.—Corpus Christi July 19, 2012, no pet.) (mem.op.); *Harrill v. A.J.'s Wrecker Servs., Inc.,* 27 S.W.3d 191, 195 (Tex.App.—Dallas 2000, pet. dism'd w.o.j.); *D'Tel Commc'ns v. Roadway Package Serv., Inc.,* 987 S.W.2d 213, 214 (Tex.App.—Eastland 1999, no pet.).

[4]  *See also Fort Worth & D.C Ry. Co. v. Brewer,* 1 S.W.2d 686, 686 (Tex.Civ.App.—Amarillo 1928, no writ) ("If the record does not disclose that the written pleadings constituted the whole pleadings, it will be presumed that there were oral pleadings necessary to support the judgment."); *Amarillo Commercial Co. v. Chicago, R.I. & G. Ry. Co.,* 140 S.W. 377, 378 (Tex.Civ.App.—Amarillo 1911, no writ) ("[If] no oral pleadings on the part of the plaintiff are noted on the docket, it will be presumed that there was some oral pleading by plaintiff at the time the account was filed, from which the justice received that information, and which he failed to note upon the docket.").

[5]  Parties have pleaded orally in justice courts since the early days of the Republic, and the practice continued in early statehood. *See, e.g.,* Act approved Nov. 4, 1837, 2d Cong., R.S., § 1, 1837 Repub. Tex. Laws 14, *reprinted in* 1 H.P.N. Gammel, *The Laws of Texas 1822–1897,* at 1356 (Austin, Gammel Book Co. 1898) ("[A]ll civil proceedings before justices of the peace, shall be had in a summary manner, and without the formality of a petition in writing...."); Act approved Aug. 13, 1870, 12th Leg., C.S., ch. 65, § 7, 1870 Tex. Gen. Laws 87, 93, *reprinted in* 6 H.P.N. Gammel, *supra,* at 261, 267 ("The pleading in a justice's court shall be oral....").

[6]  In fact, in the first pleading filed in county court—appellants' answer—appellants pleaded an "affirmative defense of failure of consideration," thus indicating that Store Fixtures had previously pleaded a breach of contract claim. At the time, the only written pleadings Store Fixtures had filed were its justice court petitions.

[7]  Although some of these words on Defendants' Exhibit No. 3 appear illegible, Store Fixtures' does not contest appellants' interpretation, so we accept as true this factual allegation. *See* Tex.R.App. P. 38.1(g) ( "In a civil case, the court will accept as true

the facts stated unless another party contradicts them.").

8    Appellants suggest this case has

> enormous implications for consumers in Texas and across the country [because it] addresses an all-too-common occurrence but a novel legal question: whether a consumer who properly and successfully disputes a credit card charge pursuant to a merchant's agreement with its credit card company may nevertheless be sued by and found liable to that same merchant for the full disputed amount despite the merchant's failure to comply with such agreement.

9    Appellants also ask this court to consider several excluded exhibits related to the credit card dispute, including Genender's two-page complaint filed with her credit card company and a notification from Store Fixtures' credit card company that the dispute was resolved in Genender's favor. These exhibits do not support appellants' construction of the contract or remove any ambiguity about the terms of the contract.

10    There was conflicting evidence about whether appellants accepted the shelving and whether the shelving conformed to the contract. But the jury resolved this conflicting evidence in Store Fixtures' favor, finding that appellants failed to comply with the agreement and Store Fixtures did not fail to comply with the agreement. We must defer to the jury's resolution of conflicting evidence. *See, e.g., City of Keller v. Wilson,* 168 S.W.3d 802, 820–21 (Tex.2005).

11    The jury charge here defines "acceptance" and declares, "A buyer must pay at the contract rate for any goods accepted."

12    *See also Gutierrez v. Wright Lawfirm, PLLC,* No. 05–10–00725–CV, 2012 WL 1898950, at *6 (Tex.App.—Dallas Apr. 27, 2012, no pet.) (mem.op.); *Belew v. Rector,* 202 S.W.3d 849, 857 (Tex.App.—Eastland 2006, no pet.); *Harrison v. Gemdrill Int'l, Inc.,* 981 S.W.2d 714, 719 (Tex.App.—Houston [1st Dist.] 1998, pet. denied); *Evans Cooperage of Houston, Inc. v. Port Drum Co.,* No. C14–92–00966–CV, 1994 WL 7243, at *4 (Tex.App.—Houston [14th Dist.] Jan. 13, 1994, writ denied) (not designated for publication); *Jim Howe Homes, Inc. v. Rogers,* 818 S.W.2d 901, 904 (Tex.App.—Austin 1991, no pet.); *Mackey v. Mackey,* 721 S.W.2d 575, 579 (Tex.App.—Corpus Christi 1986, no writ).

13    The parties dispute when exactly presentment must be made, and this court appears to have conflicting precedent on the subject. *Compare Caldwell & Hurst v. Myers,* 714 S.W.2d 63, 65 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("Proper presentment is the assertion of a claim and a request for payment made 30 days before initiation of a suit."), *with Peissel v. Peissel,* 620 S.W.2d 796, 800 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) ("The rule in Texas is presentment of the claim must be made at least 30 days before trial, even if made after the suit is filed."), *and Cano v. Nino's Paint & Body Shop,* No. 14–08–00033–CV, 2009 WL 1057622, at *7 (Tex.App.—Houston [14th Dist.] Apr. 16, 2009, no pet.) (mem.op.) ("Presentment may be made either before or after filing suit, provided it is made at least 30 days before judgment."). Because we hold that Store Fixtures failed to prove presentment under the latest timeframe possible—30 days before judgment—we need not resolve when presentment must be made.

14    An award of attorney's fees must be reversed if there is no evidence of presentment. *See Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.,* 393 S.W.3d 492, 516–17 (Tex.App.—Dallas 2013, pet. denied) (trial court correctly granted JNOV denying attorney's fees because there was no evidence of presentment); *Border Gateway, L.L.C. v. Gomez,* No. 14–10–01266–CV, 2011 WL 4361485 (Tex.App.—Houston [14th Dist.] Sept. 20, 2011, no pet.) (mem.op.) (trial court abused its discretion in a bench trial by awarding attorney's fees because there was "no evidence" of presentment); *Edinburg Meat Prods. Co. v. Vernon Co.,* 535 S.W.2d 432, 437 (Tex.Civ.App.—Corpus Christi 1976, no writ) (sustaining "no evidence" point on presentment issue).

15    Although not cited by Store Fixtures on appeal, Plaintiff's Exhibit No. 3 is an "invoice" contained in this record. It is dated May 3, 2011, the date that appellants paid for the shelving on Genender's credit card. But it shows a "Payments/Credits" of the full amount of the invoice and a "balance due" of $0.00. This does not show a demand for payment on an existing claim for a just amount owed. Further, we note that Store Fixtures contends that nonpayment occurred when the credit card charge was reversed. But Store Fixtures' president testified that Store Fixtures never demanded payment or contacted Genender about a contract claim before initiating suit in the justice court. There is no evidence that Store Fixtures sent an invoice to appellants showing a balance owing—no demand for payment.

16    We have reviewed Exhibit C to Store Fixtures' response to appellants' motion to disregard the jury's answer to Jury Question No. 5 regarding attorney's fees, which is Store Fixtures' response to appellants' request for disclosures. The document does not demand payment of the claim but rather explains the legal theories and factual bases for the claim. Regardless, the trial court would have abused its discretion by considering the document for the same reasons articulated below in Part IV.D of this opinion regarding the affidavit.

17    Appellants objected because the affidavit was "an improper and untimely attempt to supplement the record before the jury."

18      Although Bloome testified before the jury about the amount of his fees, he did not testify about the alleged July 12 demand.

19      Because we conclude Store Fixtures failed to prove presentment, we do not address appellants' contention that Store Fixtures failed to plead presentment. *See* Tex.R.App. P. 47.1.

---

**End of Document**                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

170 S.W.3d 242
Court of Appeals of Texas,
Dallas.

Dennis NAUSLAR and Nauslar Investments,
L.L.C., Appellant
v.
COORS BREWING CO. and Golden Distributing
Enterprises, L.P., Appellees.

No. 05–04–00704–CV. | Aug. 19, 2005.

**Synopsis**
**Background:** Individual, who was sole owner of limited liability company (LLC) which had been both limited partner in beer distributorship limited partnership and general partner in limited partnership's general partner, and the LLC, brought claims, personally and on behalf of limited partnership, against brewery for breach of contract and violation of Texas Beer Industry Fair Dealing Law (BIFDL), and against brewery and its assignee for conspiracy, negligence per se, and tortious interference, relating to defendants' conduct in blocking limited partnership's proposed joint venture with another distributor, with brewery eventually approving of sale of limited partnership to the other distributor. The 193rd District Court, Dallas County, David Evans, J., granted defendants' plea to the jurisdiction, based on lack of standing, and denied attorney fee award to brewery under BIFDL. Cross-appeals were taken.

**Holdings:** The Court of Appeals, Michael J. O'Neill, J., held that:

[1] individual plaintiff lacked standing to bring common-law claims;

[2] LLC lacked standing to bring common-law claims;

[3] plaintiffs lacked standing to bring claims under BIFDL;

[4] BIFDL does not prohibit a beer distributor from making a warranty of non-assignment of BIFDL claims;

[5] plaintiffs lacked capacity to sue on behalf of limited partnership; and

[6] brewery was entitled to prevailing-party attorney fees under BIFDL.

Affirmed in part, reversed in part, and remanded.

West Headnotes (34)

**[1]** **Appeal and Error**
Cases Triable in Appellate Court

Because the question of standing is a legal question, the appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction.

3 Cases that cite this headnote

**[2]** **Action**
Persons entitled to sue

Standing is a component of a court's subject-matter jurisdiction.

5 Cases that cite this headnote

**[3]** **Courts**
Allegations, pleadings, and affidavits

The plaintiff has the burden of alleging facts that affirmatively demonstrate a court's subject-matter jurisdiction to hear a cause.

1 Cases that cite this headnote

**[4]** **Pleading**
Plea to the Jurisdiction

A plea to the jurisdiction challenges a trial court's authority to hear a case by alleging that the factual allegations in the plaintiff's pleadings, when taken as true, fail to invoke the

trial court's subject-matter jurisdiction.

1 Cases that cite this headnote

---

**[5]** **Pleading**
👈Construction in General

The court construes the allegations in the pleadings in favor of the pleader.

Cases that cite this headnote

---

**[6]** **Pleading**
👈Amendments following sustaining of pleas

When a plaintiff fails to plead facts that establish subject-matter jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend after granting of plea to the jurisdiction.

1 Cases that cite this headnote

---

**[7]** **Pleading**
👈Amendments following sustaining of pleas

If the pleadings affirmatively negate the existence of subject-matter jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend.

Cases that cite this headnote

---

**[8]** **Action**
👈Persons entitled to sue

A person has "standing" to sue when he is

personally aggrieved by the alleged wrong.

3 Cases that cite this headnote

---

**[9]** **Action**
👈Persons entitled to sue

A person has "standing" to sue if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter, as well as his own.

14 Cases that cite this headnote

---

**[10]** **Action**
👈Persons entitled to sue

Without a breach of a legal right belonging to the plaintiff, the plaintiff has no standing to litigate.

5 Cases that cite this headnote

---

**[11]** **Action**
👈Persons entitled to sue

Only the person whose primary legal right has been breached may seek redress for an injury.

10 Cases that cite this headnote

---

**[12]** **Action**

**Persons entitled to sue**

An individual stakeholder in a legal entity does not have a right to recover personally for harms done to the legal entity.

6 Cases that cite this headnote

**[13]** **Action**
**Persons entitled to sue**

Where damage is to the business entity's worth, the individual stakeholder cannot personally recover, whether the damages sought are in terms of diminished value of an ownership interest or loss of employee benefits.

1 Cases that cite this headnote

**[14]** **Partnership**
**Partnership or Partners as Plaintiffs**

A partner has no individual, separate cause of action for losses suffered by reason of tortious interference with a contract between the partnership and a third party; damages for loss in value of the partnership interest or the partner's employment losses are subsumed in the partnership's causes of action.

5 Cases that cite this headnote

**[15]** **Partnership**
**Persons entitled to sue; standing**

Individual who was sole owner of limited liability company (LLC) which had been both limited partner in beer distributorship limited partnership and general partner in limited partnership's general partner, and who was also prospective company manager for proposed joint venture between limited partnership and another beer distributor, lacked standing to sue brewery for breach of contract, and to sue

brewery and its assignee for conspiracy, negligence per se, and tortious interference, so as to recover, on his own behalf, damages for injuries to limited partnership that diminished the value of individual's ownership interest and affected his prospective employment, with such claims relating to brewery's invocation of its right under its distributorship agreement with limited partnership to negotiate exclusively to buy limited partnership, brewery's subsequent assignment of that right, and brewery's and assignee's efforts to block the joint venture, with brewery eventually approving of outright sale of limited partnership to other distributor; right of recovery for injuries to limited partnership was limited partnership's alone.

6 Cases that cite this headnote

**[16]** **Partnership**
**Persons entitled to sue; standing**

Limited liability company (LLC), as both former limited partner in beer distributorship limited partnership and former general partner in limited partnership's general partner, lacked standing to sue brewery for breach of contract, and to sue brewery and its assignee for conspiracy, negligence per se, and tortious interference, so as to recover damages, on behalf of LLC, for injuries to limited partnership that diminished the value of LLC's ownership interest, with such claims relating to brewery's conduct, in response to proposal for joint venture between limited partnership and another beer distributor, in invoking its right under its distributorship agreement with limited partnership to negotiate exclusively to buy limited partnership, brewery's subsequent assignment of that right, and brewery's and assignee's efforts to block the joint venture, with brewery eventually approving of outright sale of limited partnership to other distributor; right of recovery for injuries to limited partnership was limited partnership's alone, and LLC no longer held ownership interest in limited partnership.

4 Cases that cite this headnote

generally interprets the statute according to its plain meaning.

Cases that cite this headnote

**[17]** **Action**
🔑Persons entitled to sue

Standing to sue can be predicated upon either statutory or common-law authority.

3 Cases that cite this headnote

**[22]** **Statutes**
🔑Language

The court begins statutory interpretation by examining the exact wording of the statute and applying the tenet that the legislature chooses its words carefully and means what it says.

2 Cases that cite this headnote

**[18]** **Action**
🔑Persons entitled to sue

Common-law rules of standing apply unless statutory authority for standing exists.

3 Cases that cite this headnote

**[23]** **Statutes**
🔑Statute as a Whole; Relation of Parts to Whole and to One Another

The court determines legislative intent from the entire act and not just its isolated portions.

6 Cases that cite this headnote

**[19]** **Appeal and Error**
🔑Cases Triable in Appellate Court

The appellate court reviews matters of statutory construction de novo.

Cases that cite this headnote

**[24]** **Intoxicating Liquors**
🔑Judicial review and enforcement

Neither an individual, who was sole owner of limited liability company (LLC) which had been both limited partner in beer distributorship limited partnership and general partner in limited partnership's general partner, nor the LLC, was the distributor under brewery's distributorship agreement with limited partnership, and thus, individual and LLC lacked standing to bring action against brewery under Texas Beer Industry Fair Dealing Law (BIFDL) for unreasonably withholding approval of transfer of distributorship interest. V.T.C.A., Alcoholic Beverage Code §§ 102.76(a), 102.79(a).

**[20]** **Statutes**
🔑Intent

In construing a statute, the court's objective is to determine and give effect to the legislature's intent.

3 Cases that cite this headnote

**[21]** **Statutes**
🔑Plain language; plain, ordinary, common, or literal meaning

If a statute's meaning is unambiguous, the court

Cases that cite this headnote

[25]     **Intoxicating Liquors**
⬤Quantity, and sale at retail or wholesale;
regulation of wholesalers in general

A beer distributor's representation, in a release, that it has not assigned its statutory claims under the Texas Beer Industry Fair Dealing Law (BIFDL), if any, to a third party does not violate the provision of BIFDL prohibiting agreements varying the effect of BIFDL, because BIFDL grants a right of action only to distributors or manufacturers who are parties to a distributorship agreement. V.T.C.A., Alcoholic Beverage Code §§ 102.72(c), 102.79(a).

1 Cases that cite this headnote

[26]     **Action**
⬤Persons entitled to sue
**Parties**
⬤Capacity and interest in general

A plaintiff must have both standing and capacity to bring a lawsuit.

1 Cases that cite this headnote

[27]     **Parties**
⬤Capacity and interest in general

A party has capacity to sue when it has legal authority to act, regardless of whether it has a justiciable interest in the controversy.

Cases that cite this headnote

[28]     **Partnership**
⬤Persons entitled to sue; standing

Individual, who was sole owner of limited liability company (LLC) which had been both limited partner in beer distributorship limited partnership and general partner in limited partnership's general partner, and the LLC, after sale of limited partnership's assets to another distributor, without any pre-sale assignment to individual and LLC of limited partnership's causes of action against brewery and its assignee, lacked capacity to sue brewery and its assignee, on behalf of limited partnership, for breach of contract, and to sue brewery and its assignee, on behalf of limited partnership, for conspiracy, negligence per se, and tortious interference, relating to brewery's conduct, in response to proposal for joint venture between limited partnership and other distributor, in invoking its right under its distributorship agreement with limited partnership to negotiate exclusively to buy limited partnership, brewery's subsequent assignment of that right, and brewery's and assignee's efforts to block the joint venture, with brewery eventually approving of outright sale of limited partnership to other distributor.

3 Cases that cite this headnote

[29]     **Corporations and Business Organizations**
⬤Construction, operation, and effect
**Corporations and Business Organizations**
⬤Assumption of or Succession to Transferor's Debts and Liabilities

When a business entity is acquired in its entirety by another, in the absence of specific terms to the contrary, both the liabilities and assets of the acquired company are transferred to the purchaser.

Cases that cite this headnote

[30]     **Evidence**
⬤Pleadings

Individual, who was sole owner of limited liability company (LLC) which had been both limited partner in beer distributorship limited

partnership and general partner in limited partnership's general partner, and the LLC, by making assertion of fact, in their petition against brewery, that brewery had conditioned its approval of sale of limited partnership to another distributor on limited partnership warranting that it had not assigned its claims against brewery to another party, judicially admitted that individual and LLC had not been assigned legal title to limited partnership's causes of action against brewery, which admission was relevant to whether individual and LLC had capacity to sue brewery on behalf of limited partnership.

1 Cases that cite this headnote

**[31] Pleading**
🔑 Statement of cause of action in general

A party may plead himself out of court, e.g., the plaintiff may plead facts which affirmatively negate his cause of action.

Cases that cite this headnote

**[32] Appeal and Error**
🔑 Reversal ineffectual or not beneficial

Appellate court would not remand to trial court, so that individual, who was sole owner of limited liability company (LLC) which had been both limited partner in beer distributorship limited partnership and general partner in limited partnership's general partner, and the LLC, could plead more specifically a basis for their capacity to sue brewery on behalf of limited partnership, for brewery's interference with limited partnership's proposed joint venture, where remand would be futile; individual and LLC had already in their pleadings affirmatively negated that they owned legal title to the causes of action, asserting instead a legal theory to overcome their lack of legal title, which theory the appellate court rejected.

2 Cases that cite this headnote

**[33] Intoxicating Liquors**
🔑 Judicial review and enforcement

Prevailing-party attorney fee award is mandatory, in provision of Texas Beer Industry Fair Dealing Law (BIFDL) stating that prevailing party "shall" recover reasonable attorney fees in an action for violation of BIFDL. V.T.C.A., Alcoholic Beverage Code § 102.79(a), (c).

3 Cases that cite this headnote

**[34] Intoxicating Liquors**
🔑 Judicial review and enforcement

Brewery was "prevailing party," and therefore was entitled to prevailing-party attorney fees under Texas Beer Industry Fair Dealing Law (BIFDL), in action brought under BIFDL by individual who was sole owner of limited liability company (LLC) which had been both limited partner in beer distributorship limited partnership and general partner in limited partnership's general partner, and by the LLC, where the court concluded that individual and LLC lacked standing to sue under BIFDL. V.T.C.A., Alcoholic Beverage Code § 102.79(a), (c).

3 Cases that cite this headnote

**Attorneys and Law Firms**

**\*246** Martin J. Siegel, Houston, TX, for Appellant.

Jon P. Christiansen, Michael J. Aprahamian, Foley & Lardner LLP, Milwaukee, WI, Monica Wiseman Latin, J. Michael Hughes, Rodney H. Lawson and John Franklin Guild, Carrington, Coleman, Sloman & Blumenthal, L.L.P., David Bryant, Diamond, McCarthy, Taylor, Finley, Bryant & Lee, Sean Joseph McCaffity, Dallas, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and MAZZANT.

**OPINION**

Opinion by Justice O'NEILL.

The trial court granted the Defendants' pleas to the jurisdiction for lack of standing **\*247** on all of the Plaintiffs' claims and dismissed the case. We conclude that (1) Plaintiff–Appellants lack standing on the statutory and common-law causes of action brought on their own behalf. Concerning the causes of action asserted "on behalf of" the business entity that they sold, they affirmatively negate having capacity to bring those claims. Accordingly, we affirm the trial court's dismissal of all of Plaintiffs' claims. We reverse the trial court's order denying Coors attorneys' fees and remand that issue.

**Facts**
The crux of this dispute is the disapproval by Coors Brewing Co. ("Coors") of a proposed consolidation in 2001 between Willow Distributors, L.P. ("Willow"), an entity distributing Coors beer in the Dallas area, and the distributor of Miller beer, Miller of Dallas ("Miller"). Plaintiffs alleged that Willow and Miller had agreed to a joint venture that would be operated by a new entity, United LP. Willow and Miller would each own 50% of the new entity, and the cash flow from the new business would be shared equally. In addition, Nauslar asserts the new enterprise would employ him as a company manager.

At the time of the proposed consolidation (the "Consolidation"), neither of the Plaintiffs was party to the distributorship agreement with Coors. Rather, Willow was the contracting party and the named distributor under the distributor agreement with Coors. Plaintiff Dennis Nauslar, individually, did not have a direct ownership interest in Willow, and Plaintiff Nauslar Investments was the limited partner in Willow. The structure underpinning Willow is as follows: Willow's general partner was DEN L.P. and its limited partner was Nauslar Investments LLC. Nauslar, individually, was 100% owner of Nauslar Investments, which in turn was the limited partner in DEN L.P (general partner in Willow).

When, in September 2001, Nauslar presented the proposed Consolidation to Coors for its approval, Coors

rejected the deal. Instead, Coors invoked its right under the distributorship agreement to negotiate exclusively to buy Willow. It assigned that exclusive right to Golden Distributing Enterprises, L.P. (Golden). Over the next year, according to Plaintiffs, it became clear that Golden could not feasibly consolidate with or purchase Willow. Subsequently, Nauslar approached Miller again, but this time Miller was interested in only an outright purchase of Willow. Coors approved an outright sale to Miller. Coors, relying on a clause in the distributorship agreement, required Nauslar to sign a "mutual release" on behalf of Willow. Under that agreement, both Willow and Coors released any and all claims each had against the other and also warranted that neither party had assigned any such claims to a third party. Nauslar signed the release, and Miller bought Willow and DEN L.P. from Nauslar and Nausar Investments for $57.8 million.

Nauslar and Nauslar Investments sued Coors, alleging it unreasonably disapproved the proposed Consolidation with Miller, in violation of the Texas Beer Industry Fair Dealing Law. They also brought a number of common-law claims against Coors and Golden, including one for tortious interference with the Consolidation. After two hearings, the trial court granted Coors's and Golden's pleas to the jurisdiction and dismissed all of the Plaintiffs' causes of action for lack of standing. Plaintiffs brought this appeal, challenging the trial courts' dismissal of their statutory and common-law causes of action.

**\*248 Summary**
Plaintiffs seek to bring their claims in their own right, as individual claims brought on their own behalf. They also assert—as former partners and owners of Willow—claims "on behalf of" Willow, for alleged injuries to Willow itself, but with recovery going to Plaintiffs, not Willow. First, we address the individual claims and conclude that Plaintiffs lack standing to bring either the common-law or statutory causes of action in their own right. We address next the claims brought "on behalf of" Willow, i.e., the Willow partnership's claims. We conclude that Plaintiffs, in their live pleading, affirmatively negate that they have capacity to bring claims on behalf of Willow. Having rejected their other theory by which to allege capacity, we affirm dismissal of the claims asserted on behalf of Willow. We conclude that an award of attorney's fees under the statute is mandatory if one party prevails in an action under that statute, and thus we reverse the trial court's order denying Coors its attorney's fees and remand that issue.

## I. Common–Law Causes of Action Asserted as Individual Right of Action

We address whether the Plaintiffs have standing, in their own right, to bring and personally recover on the common-law causes of action[1] they assert against Defendants. We note first the injury asserted. Plaintiffs allege that Willow was weakened by Coors's efforts to force a deal with Golden, and that Willow's value declined between the time of the disapproval in 2001 and the subsequent sale to Miller in 2003. Specifically, Plaintiffs assert damages as follows: Nauslar, individually, seeks redress for (1) the distributions, profits and other benefits of ownership he would have reaped as the *sole owner* of Willow and other corporate entities, had Coors approved the Consolidation; and (2) loss of salary, bonuses and other employment compensation he would have been paid by United (the operating entity to be formed upon Consolidation) as well as employment-related losses as an *employee* of Willow. Nauslar Investments, Inc. asserts that, as the *former general partner* of DEN LP (the general partner of Willow) and as the *former limited partner* of Willow, it was "injured to the same degree as—and could assert all claims of DEN LP and Willow."

In sum, Nauslar seeks damages for loss of the benefits of ownership and employment-related losses. Nauslar Investments, as former general partner of the general partner of Willow, seeks damages that mirror those suffered by Willow.

### A. Standard of Review and Principles Governing Standing

[1] [2] [3] [4] [5] Because the question of standing is a legal question, we review de novo a trial court's ruling on a plea to the jurisdiction. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). Standing is a component of a court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). The plaintiff has the burden of alleging facts that affirmatively demonstrate a court's jurisdiction to hear a cause. *Id.* A plea to the jurisdiction challenges a trial court's authority to hear a case by alleging that the factual allegations **\*249** in the plaintiff's pleadings, when taken as true, fail to invoke the trial court's jurisdiction. *El Paso Cmty. Partners v. B & G/Sunrise Joint Venture,* 24 S.W.3d 620, 623 (Tex.App.-Austin 2000, no pet.) (citing *Bybee v. Fireman's Fund Ins. Co.,* 160 Tex. 429, 331 S.W.2d 910, 917 (1960)). We construe the allegations in the pleadings in favor of the pleader. *Tex. Air Control Bd.,* 852 S.W.2d at 446.

[6] [7] When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.*

[8] [9] A person has standing to sue when he is personally aggrieved by the alleged wrong. *Nootsie Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996). A person has standing if (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter, as well as his own. *Precision Sheet Metal Mfg. Co., Inc. v. Yates,* 794 S.W.2d 545, 552 (Tex.App.-Dallas 1990, writ denied).

[10] [11] Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. *Exxon Corp. v. Pluff,* 94 S.W.3d 22, 27 (Tex.App.-Tyler 2002, pet. denied); *Cadle Co. v. Lobingier,* 50 S.W.3d 662, 669–70 (Tex.App.-Fort Worth 2001, pet. denied); *Brunson v. Woolsey,* 63 S.W.3d 583, 587 (Tex.App.-Fort Worth 2001, no pet.). Only the person whose primary legal right has been breached may seek redress for an injury. *Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex.1976) (defrauded party only can bring suit to set aside deed obtained by fraud). "Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit." *Id.*

### B. Legal Principles: Whose Primary Legal Right Was Allegedly Infringed?

Plaintiffs' principle argument is that the issue raised concerns who owns the claims, and thus presents a question of capacity, not standing. They rely on *Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex.1988) (a challenge to a shareholder's right to bring a cause of action for wrongs done to the corporation raises a question of capacity). They also rely on *Prostok v. Browning,* 112 S.W.3d 876, 921 (Tex.App.-Dallas 2003) ("A challenge to who owns a claim raises the issue of capacity, not standing."), *aff'd,* 165 S.W.3d 336 (Tex.2005). We disagree that the pleadings raise only an

issue of capacity, not standing. The case law reveals that, with respect to Plaintiffs' individual common-law causes of action, a fundamental question is raised: Do these claims embody a primary legal right belonging to the Plaintiffs or does the Willow partnership have the primary right of action? That raises an issue of standing.

We note initially that *Pledger* cannot stand for the simplistic proposition that a challenge to a stakeholder's bringing a suit to recover personally for corporate wrongs **\*250** raises an issue of capacity only. The *Pledger* court did not, indeed could not, discuss standing because that issue was not before it. 762 S.W.2d at 145–46. The case was decided before the determination that standing is an component of subject-matter jurisdiction and thus can be raised first on appeal. *See Tex. Air Control Bd.,* 852 S.W.2d at 446.

[12] An individual stakeholder in a legal entity does not have a right to recover personally for harms done to the legal entity. *Wingate v. Hajdik,* 795 S.W.2d 717, 719 (Tex.1990). In *Wingate,* one corporate shareholder sued another alleging he had appropriated corporate assets. The court ruled that individual stockholders have no separate, independent right of action for injuries suffered by the corporation, when the injures merely result in depreciation of the value of plaintiffs' stock. *Id.* at 719.

In *Fredericksburg Indus., Inc. v. Franklin Int'l, Inc.,* 911 S.W.2d 518, 520 (Tex.App.-San Antonio 1995, writ denied),* the president/employee of a furniture manufacturing corporation sued a corporate supplier, asserting he lost wages as a result of the supplier's delivering defective glue. The court held he lacked standing: the cause of action belonged to the corporation alone, as the damages were to the corporation's profits, and any claim the plaintiff had for lost wages was against the corporation. *Id.* at 521.

[13] Other cases in the corporate context reaffirm that where damage is to the business entity's worth, the individual stakeholder cannot personally recover, whether the damages sought are in terms of diminished value of an ownership interest or loss of employee benefits. In *Mendenhall v. Fleming Co., Inc.,* 504 F.2d 879 (5th Cir.1974), the plaintiffs sought to recover personally for damages from anti-trust violations arising from the operation of retail stores by a corporation, which they had created. *Id.* at 880. The court noted that the business allegedly interfered with was that operated by the corporation and the damages sought were direct damage to corporate worth. Thus, the plaintiffs lacked standing. *Id.* at 880–81. The right of recovery was the entity's right alone, even though in an economic sense the impact "may

bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership." *Id.* at 881 (quoting *Martens v. Barrett,* 245 F.2d 844, 846 (5th Cir.1957)).

[14] A partner has no individual, separate cause of action for losses suffered by reason of tortious interference with a contract between the partnership and a third party: damages for loss in value of the partnership interest or employment losses are subsumed in the partnership's causes of action. *Cates v. Int'l Tel. & Tel. Corp.,* 756 F.2d 1161 (5th Cir.1985) (construing Texas law).

## C. Application and Conclusion

[15] [16] Nauslar generally argues that he has standing, because he was "personally aggrieved" by, and suffered "direct injury" from, Defendants' actions in disapproving the Consolidation. He seeks to recover for loss of benefits of ownership and employment. Nauslar Investments asserts it has standing to sue, individually, for harms done to the partnership and seeks damages mirroring those Willow could recover.

As the case law demonstrates, Plaintiffs do not have a separate, individual right of action for injuries to the partnership that diminished the value of their ownership interest in that entity. *Wingate,* 795 S.W.2d at 719. Willow is the one who suffered the direct injury from the alleged **\*251** harm to the partnership's worth, and any loss to Plaintiffs in the sale price is "both indirect to and duplicative of" the entity's right of action. *Mendenhall,* 504 F.2d at 881. The right of recovery is Willow's right alone, even though the economic impact of the alleged wrongdoing may bring about reduced earnings, salary or bonus. *Fredericksburg,* 911 S.W.2d at 520; *Cates,* 756 F.2d at 1181; *Mendenhall,* 504 F.2d at 881.

We note the applicability of the facts in *Cates* to the instant case. 756 F.2d 1161. The *Cates* plaintiff, a minority partner, attempted to bring individual claims for tortious interference with the partnership's business, as do the Plaintiffs here. The damages sought were similar as well. The court's holding warrants quotation:

> Accordingly, any claims for damages which [plaintiff] suffered by reason of diminution in value of his partnership interest, or his share of partnership income, or his salary or bonus from the partnerships or their businesses, by reason of breach of such agreements, or tortious interference with such

> businesses, or anticompetitive conduct interfering with or limiting or "taking over" such businesses or their activities, *are in effect subsumed within the causes of action of the partnerships and do not afford [plaintiff] ... a separate, individual cause of action.*

*Id.* at 1181.

Accordingly, Willow possesses the primary legal right that was allegedly violated, and thus Willow is the exclusive party with a justiciable interest in redressing those alleged injuries. Accordingly, Plaintiffs do not have a standing to pursue and recover personally on the asserted common-law causes of action.

Plaintiffs' arguments to the contrary do not alter our conclusion. Concerning the tortious-interference cause of action, Nauslar argues that he has individual standing to pursue the claim under *Sturges v. Wal–Mart Stores, Inc.,* 39 S.W.3d 608 (Tex.App.-Beaumont 1998), *rev'd on other grounds,* 52 S.W.3d 711 (Tex.2001). In that case, individuals were deemed to have standing where a proposed business entity was never formed due to the defendant's interference. The appellate court held that the individual plaintiffs, who had signed the letter of intent, were all "interested parties who would have profited from the prospective lease," who were directly involved in the building of the proposed structure, and who sustained "direct economic injury" as a result of Wal–Mart's interference. *Id.* at 614–15.

*Sturges* is inapposite. The proposed entity in *Sturges* was never formed, leaving the principals in that enterprise as the directly injured parties. In today's case, the direct injury from Defendants' alleged wrongdoing was to Willow, the operating business entity that would have consolidated with Miller.

Plaintiffs also rely on *Abraham Inv. Co. v. Payne Ranch, Inc.,* 968 S.W.2d 518 (Tex.App.-Amarillo 1998, pet. denied) to overcome the obstacle that they were not party to the proposed consolidation agreement between Willow and Miller. In that case, plaintiff Abraham had a contract to purchase a ranch from defendant Payne. That contract was subject to a pre-existing preferential right of purchase contained in a contract between Payne and Campbell, which Campbell exercised to purchase the ranch. Defendants asserted Abraham lacked standing to sue for tortious interference, as he was not party to the Payne–Campbell contract. The court disagreed: whether Abraham was entitled to fulfillment of the direct contract

to purchase with Payne turned on whether the third-party contract was properly exercised. *Id.* at 523–34.

**\*252** *Abraham* is inapposite, as the analogy fails at the outset. The plaintiff had a direct contract with the defendant. Disposition under that contract turned on whether the third-party contract was properly exercised. In today's case, there is no direct contract between Plaintiffs and Defendants Coors and Golden. Accordingly, Plaintiffs lack standing to pursue their tortious-interference cause of action against Defendants.

Nauslar Investments asserts standing in its roles as *former* general partner of Willow's general partner and *former* limited partner of Willow. To overcome the obstacle that it is not a general partner of Willow, it relies on the double derivative rule governing corporate derivative suits. To overcome the general rule that a partner cannot sue individually on a partnership claim, it relies on cases applying an exception to that rule. Those cases do not apply because, as discussed below, Nauslar Investments sold to Miller the entirety of its interest in Willow.[2] None of the cases it cites stands for the proposition that a partner that has sold its entire interest in the partnership can personally recover on a claim belonging to that partnership. The *Mendenhall* court, discussing the sale of corporate stock, captured the effect of the Plaintiffs' sale of the partnership:

> When [plaintiffs] sold their corporate stock to a third party, *they sold their right to control the very cause of action they now attempt to assert.* This suit cannot reclaim that corporate cause of action by asserting the same damage sustained by the corporation also served to diminish the value of their individually held estates. *Mendenhall,* 504 F.2d at 881.

## II. Plaintiffs' Statutory Causes of Action Asserted in Their Right

Plaintiffs assert that Coors unreasonably disapproved the Consolidation in violation of the Texas Beer Industry Fair Dealing Law (BIFDL), which prohibits manufacturers from withholding approval of the transfer of distributorship rights if the substituting party meets "reasonable standards." TEX. ALCO. BEV.CODE ANN.. § 102.71, -.76, -.77, -.79 (Vernon 1995). We examine whether Plaintiffs have standing, in their own right, to bring a claim for the alleged violation of BIFDL.[3]

## A. Legal Principles Governing Standing Based on Statute

[17] [18] Standing to sue can be predicated upon either statutory or common-law authority. *See Williams v. Lara,* 52 S.W.3d 171, 178–79 (Tex.2001). The general rules of standing apply unless statutory authority for standing exists. *Id.* at 178. If standing is statutorily conferred, the statute granting authority and the case law interpreting it serve as the proper framework of analysis. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984).

[19] [20] [21] [22] [23] We review matters of statutory construction de novo. *City of San Antonio* **\*253** *v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003). In construing a statute, our objective is to determine and give effect to the legislature's intent. *Id.* If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *Id.* We begin by examining the exact wording and apply the tenet that the legislature chooses its words carefully and means what it says. *Williams v. Vought,* 68 S.W.3d 102, 115 (Tex.App.-Dallas 2001, no pet.) (Morris, J., concurring). We determine legislative intent from the entire act and not just its isolated portions. *City of San Antonio,* 111 S.W.3d at 25.

BIFDL provides a judicial remedy for a "manufacturer" or "distributor," as defined in the statute,[4] who are parties to a distributorship agreement:

> If a manufacturer or distributor who is a party to an agreement pursuant to Section 102.51 of this code fails to comply with this Act or otherwise engages in conduct prohibited under this Act ... the aggrieved manufacturer or distributor may maintain a civil action in a court of competent jurisdiction....
> TEX. ALCO. BEV.CODE ANN.. § 102.79(a).

BIFDL prohibits a manufacturer from withholding approval of a distributor's transfer of its distributorship interest when the person or persons to be substituted "meet reasonable standards." The full provision reads as follows:

> *No manufacturer shall unreasonably withhold or delay its approval of any assignment, sale, or transfer of the stock of a distributor* or all or any portion of a distributor's assets, distributor's voting stock, the voting stock of any parent corporation, or the beneficial ownership or control of any other entity owning or controlling the distributor, including the distributor's rights and obligations under the terms of an agreement *whenever the person or persons to be substituted meet reasonable standards. ...*

*Id.* § 102.76(a) (emphasis added).

In a case construing these two sections of BIFDL, the Corpus Christi Court of Appeals held that the plaintiff did not have a statutory right to maintain its cause of action against the distributor, because it failed to comply strictly with the statute's requirements. *Ace Sales Co., Inc. v. Cerveceria Modelo, S.A. de C.V.,* 739 S.W.2d 442, 447 (Tex.App.-Corpus Christi 1987, writ denied). The distributor Ace sought damages for the manufacturer's failure to approve a transfer of the distributorship rights to Ace's buyer. The court noted that section 102.79 of BIFDL provides a remedy for parties to an agreement under section 102.51, which in turn requires a written agreement. TEX. ALCO. BEV.CODE ANN.. §§ 102.51, 102.79. Because Ace did not produce a written agreement, it had no remedy under BIFDL. *Id.* In so holding, the court relied on the principle that "if a cause of action and remedy for its enforcement are derived from a statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Id.* (quoting *Tex. Catastrophe Prop. Ins. Ass'n v. Council of Co–Owners of Saida II Towers Condo. Ass'n,* 706 S.W.2d 644, 646 (Tex.1986)).

**B. Analysis and Conclusion**

[24] Nauslar argues that although he is not a "distributor" under the BIFDL definition, he should be entitled to sue under the statute, based on its text, legislative history, and purpose. Nauslar **\*254** points to the text of Section 102.76(a) that protects not just transfers of the distributorship itself, but also transfers of "the voting stock of any partner corporation," as well as the "beneficial ownership" of entities owning the distributor. He argues that persons representing those interests must have standing under the statute, to effectuate the broad protective purpose of the statute. He also points to pieces of legislative history to indicate that, in discussing the pending bill, the legislators did not distinguish between the business entity that comprises the distributorship and the individuals who own that entity.

We are not persuaded to adopt Plaintiffs' expansive reading of the text of BIFDL. Rather, we are persuaded by Appellee's argument that when the legislature intends to grant a remedy to all persons who might be injured by a statutory violation, it plainly grants a remedy to "injured persons." *See, e.g.,* TEX. BUS. & COM.CODE ANN. § 19.02 (Vernon 2002) (granting judicial remedy to "a person injured" by a violation of the statute regulating relationship between manufacturers and dealers of particular equipment); TEX. OCC.CODE ANN. § 2352.201 (Vernon 2004) (violators of statute are liable to "an injured party ...").

We apply the tenet that the legislature chooses its words carefully and means what it says. *Williams,* 68 S.W.3d at 115. The remedies section, Section 102.79(a), plainly states who may sue for violations of the statute: "manufacturers" and "distributors," as defined under the statute, who are party to a distributorship agreement. These plaintiffs do not fall within the statutorily defined class of persons who may sue. Neither are we persuaded to read the statute expansively to go beyond its plainly stated purpose. The statute states that its purpose is "to promote the public's interest in the fair, efficient, and competitive distribution of beer within the state...." TEX. ALCO. BEV.CODE ANN.. § 102.72. As noted, Willow itself has standing to redress violations of the statute. This satisfies the statutory purpose of protecting the *general public interest* in fair competition. We conclude the statutory purpose does not extend to protect Plaintiffs' individual interests in obtaining higher compensation from the transfer of its interest in Willow. *Tex. Catastrophe Prop. Ins.,* 706 S.W.2d at 646 (when cause of action derives from statute, statutory provisions must be complied with in all respects or action not maintainable).

## C. Was the No–Assignment Clause Void?

[25] Nauslar asserts Coors demanded that Willow sign a mutual release of any claims it had against Coors, which included Willow's warranty that it had not assigned any of its claims to a third party. Nauslar asserts that, but for Coors's insistence that he execute the release by Willow, he would have assigned Willow's claims to himself. The release, Nauslar asserts, violated the "anti-waiver" provision of BIFDL. He argues Coors should not be allowed to circumvent the section prohibiting unreasonable disapproval of a transfer by violating the section prohibiting the release of such claims. As a remedy, Nauslar invokes equity principles, urging the court to declare an "equitable assignment" of Willow's claims to Nauslar, thus enabling him to sue—as constructive assignee of Willow's claims—under BIFDL.

Section 102.72(c) of BIFDL states, "The effect of this Act may not be varied by agreement. Any agreement purporting to do so is void and unenforceable to the extent of such variance only." Nauslar asserts that this "anti-waiver" provision prohibited Coors from conditioning its approval of the sale of Willow on Willow's **\*255** release of its claims against Coors. Nauslar insists the only permitted reason for disapproving a transfer under section 102.76 is when the proposed transferee fails to meet "reasonable standards." Coors is thus not permitted to disapprove a transfer based on a failure to sign a release. Thus Nauslar argues, the

release-with-non-assignment clause, which waives the distributor's BIFDL claim, should be declared void under the anti-waiver provision, section 102.72(c).

We note that the issue Nauslar raises, whether he individually had statutory standing to pursue Willow's claim, turns on the permissibility of the clause in which Willow warrants it did not assign its claims to a third party. Thus, we need not address whether the release by Willow of its own BIFDL claims against Coors was prohibited by the anti-waiver provision in section 102.76(c). The issue is this: Is a distributor's representation that it has not assigned its statutory claims, if any, to a third party an agreement that "varies the effect of the BIFDL" so as to be void? As discussed, the plain language of section 102.79 grants a right of action only to "distributors or manufacturers" that are party to a distributorship agreement. Nauslar points to no authority to indicate that BIFDL claims must remain freely assignable to those not otherwise entitled to bring such claims in their own right. And we see no language in the text of the statute requiring the reading urged by Plaintiffs.

Accordingly, we hold that neither Plaintiff has standing to bring the claims, on their own behalf, seeking redress for violations of BIFDL.

## III. Plaintiffs' Causes of Action Asserted "On Behalf Of" Willow

We turn to Plaintiffs' assertion of causes of action purportedly brought "on behalf of" Willow. Plaintiffs assert—as the *former partners in and owners of* Willow—they are entitled to recover personally on Willow's claims for injuries suffered by Willow. Plaintiffs argue Defendants' challenges go to the issue of "claim ownership" only. They assert, "An argument about whether a current or former owner, as distinct from his company, owns a particular claim is an argument about capacity."

## A. Legal Principles

[26] [27] A plaintiff must have both standing and capacity to bring a lawsuit. *Coastal Liquids Transp. L.P. v. Harris County Appraisal Dist.,* 46 S.W.3d 880, 884 (Tex.2001). A party has capacity to sue when it has legal authority to act, regardless of whether it has a justiciable interest in the controversy. *Nootsie, Ltd.,* 925 S.W.2d at 661. Standing pertains to a person's justiciable interest in a suit and is a component of subject-matter jurisdiction. *See Tex. Air Control Bd.,* 852 S.W.2d at 443, 445–46.

Capacity is a party's legal authority to go into court to prosecute or defend a suit. *El T. Mexican Rests., Inc. v. Bacon,* 921 S.W.2d 247, 249 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

**B. Analysis and Conclusion**

[28] [29] Plaintiffs allege, and it is undisputed, that Plaintiffs sold their interest in the Willow partnership to Miller. Willow's causes of action belong to the partnership, not to its partners. Absent an agreement otherwise, Willow's assets, including any chose in action it held, would have transferred to Miller in the sale.[5]

**\*256** [30] Plaintiffs do not allege that they consensually acquired legal title to Willow's causes of action—and thus possess exclusive authority (capacity) to prosecute and recover on Willow's claims. That is, they do not allege that, despite the sale to Miller, they retained title to Willow's causes of action, or otherwise acquired those assets by assignment. Indeed, Plaintiffs allege and argue the opposite: they allege that Coors conditioned its approval of the sale on Willow's warranting it had not assigned its claims against Coors to a third party. Nauslar argues, but for that condition, he would have caused Willow to assign its claims to himself.[6]

Plaintiffs thus judicially admit they have do not own legal title to Willow's causes of action. *Houston First American Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983) (judicial admissions are assertions of fact, not pled in the alternative, in the live pleadings of a party). Plaintiffs do posit the "constructive assignee" theory by which to establish their alleged right to bring Willow's causes of action. As a legal basis, they argue the warranty of no assignment violates BIFDL and thus should be declared void. We concluded above, as a matter of law, that the non-assignment clause does not violate BIFDL. Plaintiffs allege no other legal basis to avoid the effect of their having failed to acquire the legal right to prosecute and personally recover on Willow's causes of action.

[31] [32] To bring suit and recover on a cause of action, a plaintiff must have both standing and capacity. *El T. Mexican Rests.,* 921 S.W.2d at 250. It is recognized that a party may plead himself out of court, e.g., the plaintiff may plead facts which affirmatively negate his cause of action. *Tex. Dept. of Corrections v. Herring,* 513 S.W.2d 6, 10 (Tex.1974) (citing *Schroeder v. Tex. & Pacific Ry. Co.,* 243 S.W.2d 261 (Tex.Civ.App.-Dallas 1951, no writ)). Plaintiffs affirmatively negate that they own legal title to Willow's claims, asserting instead a legal theory to overcome that fact, which we have rejected.[7] We conclude that, on the state of the pleadings, Plaintiffs lack capacity

to bring Willow's partnership claims. Thus, the suit cannot proceed on those causes of action. We decline to remand for the trial court to engage in a futile inquiry. *Wilson* **\*257** *v. Texas Parks and Wildlife Dept.,* 8 S.W.3d 634, 635 (Tex.1999) (declining to remand for retrial of issue on which no evidence was offered; such "would be improper and, it appears, futile"); *Sabine Offshore Serv., Inc. v. City of Port Arthur,* 595 S.W.2d 840, 841 (Tex.1979) (declining to remand when futile and not in furtherance of judicial economy). We conclude the claims asserted "on behalf of" Willow were properly dismissed. Accordingly, we need not reach the issue whether Plaintiffs also lacked standing to pursue Willow's claims. In addition, we need not reach other unrelated issues raised by Plaintiff.

**IV. Attorney Fees under BIFDL**

Coors asserts, on cross-appeal, that the trial court erred in denying Coors attorney fees under BIFDL. Coors argues it prevailed on the BIFDL claims and an award of attorney's fees is mandatory to the prevailing party in an action brought under BIFDL.

Section 102.79(c) of BIFDL states,

> The *prevailing party to any action* under Subsection (a) of this section shall be entitled to actual damages, including the value of the distributor's business, as specified in Section 102.77 of this code, *reasonable attorney's fees,* and court costs.

TEX. ALCO. BEV.CODE ANN.. § 102.79(c) (emphasis added). Subsection (a) provides for a right of action for a "manufacturer or distributor" who is party to a distributorship agreement. If the defending manufacturer or distributor fails to comply with the statute, "the aggrieved manufacturer or distributor *may maintain* a civil action in a court of competent jurisdiction...." *Id.* § 102.79(a) (emphasis added).

Plaintiff's respond that, if they do not have standing under the statute, then the trial court lacks jurisdiction to award attorney's fees, relying on *Smith v. Tex. Improvement Co.,* 570 S.W.2d 90, 92 n. 3 (Tex.App.-Dallas 1978, no writ) (when court lacks jurisdiction, court cannot render judgment j.n.o.v.; only valid order is one of dismissal).

[33] [34] We have concluded that Plaintiffs lack standing to bring the BIFDL claims, either in their own right or "on

behalf of" Willow. Coors thus qualifies as a "prevailing party" within the meaning of section 102.79(c). *Robbins v. Capozzi,* 100 S.W.3d 18, 27 (Tex.App.-Tyler 2002, no pet.) ("prevailing party" successfully prosecutes or defends against an action; prevailing party is one who is vindicated). The BIFDL claims were brought under subsection (a) as section 102.79(c) requires. Further the fee award is mandatory, in that subsection (c) explicitly states the prevailing party "shall" recover reasonable attorney's fees. *See Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796, 812 (Tex.App.-Dallas 1987, no writ) (fees mandatory under statutory provision stating "consumer who prevails *shall* be awarded court costs and reasonable and necessary attorney's fees").

The Plaintiffs' reliance on the broad statements in *Smith* is misplaced. That case did not address an issue involving a statutory provision mandating an award of fees. A trial court's dismissal for lack of subject-matter jurisdiction does not prevent the concurrent award of attorney's fees under the mandatory award provision. *See Galveston*

*County Comm'rs Court v. Lohec,* 814 S.W.2d 751, 755 (Tex.App.-Houston [ (14th Dist.) ] 1991), *rev'd on other grounds,* 841 S.W.2d 361 (Tex.1992) (under declaratory-judgment statute, trial court could award attorneys' fees against party found to have no standing). Further, the statute is worded such that a manufacturer or distributor may *maintain an action* and the prevailing party in that **\*258** action *shall* recover reasonable attorney fees. Thus, the statutory text mandates the award of fees even if the action cannot be *maintained,* whether or not it is dismissed for lack of jurisdiction. Accordingly, we reverse the trial court's order denying Coors attorney's fees and remand that issue for further proceedings.

Accordingly, we **AFFIRM** the trial court's dismissal of all of Plaintiffs claims. We **REVERSE** the trial court's order denying Coors attorney's fees under BIFDL and **REMAND** that issue for further proceedings.

Footnotes

1    Plaintiffs sued Coors for breach of contract and sued both Coors and Golden for conspiracy to terminate the Consolidation, negligence per se, and tortious interference. Nauslar also asserted that he, individually, was a third-party beneficiary to the Consolidation agreement. We refer to these causes of action collectively as Plaintiffs' common-law actions.

2    The facts in the cited cases are not analogous: *Allied Chemical Co. v. DeHaven,* 824 S.W.2d 257 (Tex. App–Houston [14th Dist.] 1992,) (exceptional circumstances made it inequitable to prevent resigning partner from bringing suit on behalf of partnership during winding-up phase); *Tex. Westheimer Corp. v. 5647 Westheimer,* 68 S.W.3d 15, 21–22 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (dispute over rights to profit participation owed to partnership by third party; suit instituted during winding-up phase of partnership) In today's case, the partnership was not wound up, but as discussed below, Plaintiffs sold the partnership in its entirety.

3    It is undisputed that Willow itself has standing to pursue a BIFDL claim. Willow is not a party to this suit and Plaintiffs disavow that they are suing derivatively on any claims that belong to Willow.

4    Under section 102.71, "distributor" is defined as a person licensed under Section 64.01 or 65.01 of the Act, which sections in turn define the activities a licensed distributor is authorized to perform. TEX. ALCO. BEV.CODE ANN.. §§ 64.01, 65.01, 102.71.

5    Under the Texas Revised Limited Partnership Act (TRLPA), the partnership, not the partners, own the partnership's property. TEX.REV.CIV. STAT. ANN. art. 6132a–7.01 (Vernon Supp.2004–05). When a business entity is acquired in its entirety by another, in the absence of specific terms to the contrary, both the liabilities and assets of the acquired company are transferred to the purchaser. *Duke Energy Field Servs. Assets, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 68 S.W.3d 848, 850 (Tex.App.-Texarkana 2002, pet. denied).

6    Plaintiffs plead, in their live pleading:
     [A]s a condition for gaining its approval, and in tacit acknowledgement of its past wrongdoing, Coors extracted a purported release from Willow for claims against Coors arising out of its former, illegal conduct.
     ...
     Coors' release also contained the following provision requiring Nauslar to represent that he had not assigned Willow's claim to any third party ...
     If Coors had not conditioned approval of Nauslar's sale of Willow and DEN to Miller of Dallas on execution of its release in its original form, and had instead agreed to allow assignments, Nauslar would have assigned to himself all rights possessed by Willow to sue Coors for the claims alleged in this petition.

7    In addition, at the end of the first hearing, the trial court ordered Plaintiffs to replead with much more specificity so that you make

it clear "who is suing for what, what wrong to whom, when, and causing whatever for what period of damages.... I'm probably going to grant [the pleas to jurisdiction] the next go round if you don't make it clear...." *See Harris County v. Sykes,* 136 S.W.3d 635, 639 (Tex.2004) (if plaintiff given opportunity to amend and still fails to allege facts sufficient to withstand plea to jurisdiction, court should dismiss action).

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

331 S.W.3d 27
Court of Appeals of Texas,
Waco.

Robert D. SHIPLEY, Appellant,
v.
UNIFUND CCR PARTNERS, Appellee.

No. 10–09–00314–CV. | Oct. 13, 2010. | Rehearing
Overruled Dec. 21, 2010.

**Synopsis**
**Background:** Assignee of right to collect on credit card
account brought action against card holder. The 87th
District Court, Freestone County, Patrick H. Simmons, J.,
entered judgment against card holder. Card holder
appealed.

**[Holding:]** The Court of Appeals, Tom Gray, C.J., held
that assignee did not have standing to bring action against
card holder.

Reversed.

West Headnotes (6)

**[1]**  **Assignments**
🔑Nature and essentials in general

An assignment is simply a transfer of some right
or interest.

2 Cases that cite this headnote

**[2]**  **Assignments**
🔑Nature and extent of rights of assignee in
general

When an assignee holds a contractually valid
assignment, that assignee steps into the shoes of
the assignor and is considered under the law to

have suffered the same injury as the assignors
and have the same ability to pursue the claims.

2 Cases that cite this headnote

**[3]**  **Action**
🔑Persons entitled to sue

A court may presume the truth of allegations
made in a party's pleadings when determining
standing.

Cases that cite this headnote

**[4]**  **Pleading**
🔑Scope of inquiry and matters considered in
general

A court is not required to look solely to the
pleadings but may consider evidence and must
do so when necessary to resolve the
jurisdictional issues raised.

Cases that cite this headnote

**[5]**  **Consumer Credit**
🔑Actions;  injunction

Assignee of right to collect on credit card
account did not have ownership or title in the
account, and therefore, did not have standing to
bring action against card holder; assignee only
had been assigned right to collect, and assignor
explicitly retained title and ownership.

Cases that cite this headnote

**[6]**  **Action**
🔑Persons entitled to sue

Because standing denotes a party's justiciable interest in a controversy, it is only the party whose primary legal right has been breached that may seek redress for that injury; without a breach of a legal right belonging to that party, that party has no standing to litigate.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*27** Richard C. Jenkins, Dallas, for Appellant.

Abel Reyna, Jr., McCleskey Harriger & Brazill & Graf LLP, Lubbock, for Appellee.

Before Chief Justice GRAY, Justice REYNA, and Justice DAVIS.

## \*28 OPINION ON REHEARING

TOM GRAY, Chief Justice.

Robert Shipley appeals from the entry of a judgment against him for a debt on a credit card account. Shipley complains that the trial court erred by not dismissing the suit against him because Unifund CCR Partners lacked standing to bring the suit because the court lacked subject matter jurisdiction in that Unifund CCR Partners did not own the debt and therefore did not have standing to bring the action. Shipley also complains that the evidence was legally insufficient for the trial court to have granted a judgment against him and in favor of Unifund CCR Partners because there was no evidence that Shipley's debt had been assigned to Unifund CCR Partners.

On original submission, this Court affirmed the judgment. *See Shipley v. Unifund CCR Partners,* No. 10–09–00314–CV, 2010 Tex.App. LEXIS 4544 (Tex.App.-Waco June 16, 2010). Upon Shipley's timely motion for rehearing, we requested a response from Unifund CCR Partners, although Unifund has not done so. As authorized by Rule of Appellate Procedure 49.3, we issue this modified opinion after requesting the response. TEX.R.APP. P. 49.3. On reconsideration of the issues

presented, we will reverse the judgment, dismiss this cause for lack of jurisdiction, and withdraw our prior opinion and judgment. *Id.*

*Standing*

Shipley contends that Unifund CCR Partners did not own any interest in the account in question, and therefore, they lacked standing to bring the suit against him. Citibank South Dakota, N.A. sold the account to Unifund Portfolio A., LLC. Unifund Portfolio A, LLC then assigned its rights to collect the account to Unifund CCR Partners, but retained the title and ownership of the account. In his brief to this Court, Shipley does not complain about the sale of the account from Citibank to Unifund Portfolio A, but of the assignment from Unifund Portfolio A to Unifund CCR Partners.

Standing, a necessary component of subject-matter jurisdiction, is a constitutional prerequisite to maintaining a suit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444–45 (Tex.1993). Whether a party has standing to pursue a claim is a question of law that we review de novo. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

Standing refers to a party's justiciable interest in a controversy. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661–62 (Tex.1996); *Town of Fairview v. Lawler,* 252 S.W.3d 853, 855 (Tex.App.-Dallas 2008, no pet.). Only the party whose primary legal right has been breached may seek redress for an injury. *Nauslar v. Coors Brewing Co.,* 170 S.W.3d 242, 249 (Tex.App.-Dallas 2005, no pet.). Without a breach of a legal right belonging to that party, that party has no standing to litigate. *Cadle Co. v. Lobingier,* 50 S.W.3d 662, 669–70 (Tex.App.-Fort Worth 2001, pet. denied). In reviewing standing on appeal, we construe the petition in favor of the plaintiff, and if necessary, review the entire record to determine if any evidence supports standing. *See Tex. Air Control,* 852 S.W.2d at 446.

[1] [2] An "assignment" is simply a transfer of some right or interest. *See Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship,* 323 S.W.3d 203, 211 (Tex.App.-El Paso 2010, no pet. h.) (*citing University of Texas Med. Branch at Galveston v. Allan,* 777 S.W.2d 450, 452 (Tex.App.-Houston [14th Dist.] 1989, no writ)). When an assignee holds a contractually valid assignment, that assignee steps into the shoes of the assignor and is considered **\*29** under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims. *Southwestern Bell Tel. Co. v. Mktg. on Hold Inc.,* 308 S.W.3d 909 (Tex.2010) (*citing Holy Cross*

*Church of God in Christ v. Wolf,* 44 S.W.3d 562, 572 (Tex.2001)).

### Pleadings and Evidence in the Record

[3] [4] "It has long been the rule that a plaintiff's good faith allegations are used to determine the trial court's jurisdiction." *Eaves v. Unifund CCR Partners,* 301 S.W.3d 402, 404 (Tex.App.-El Paso 2009, no pet.) (*citing Brannon v. Pac. Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 469 (Tex.1949)). A court may presume the truth of allegations made in a party's pleadings when determining standing. *Id.* (*citing Tex. Ass'n of Bus.,* 852 S.W.2d at 446; *Brown v. Todd,* 53 S.W.3d 297, 305 n. 3 (Tex.2001) ("Because standing is a component of subject matter jurisdiction, we consider [it] as we would a plea to the jurisdiction, construing the pleadings in favor of the plaintiff.")). "A court is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *State Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001). However, the petition's sole reference to Unifund CCR Partners's ownership or standing to litigate is the statement that "Plaintiff is authorized to file this petition." We do not find that this constitutes any evidence of standing.

[5] The case was solely decided based on business records filed by Unifund CCR Partners. The evidence presented in the business records affidavit is likewise unclear as to what interest beyond the right of collection that Unifund CCR Partners owns. Additionally, the trial court sustained Shipley's hearsay objections to the affidavit and struck the content of the affidavit outside of the questions required to authenticate the business record as such. In fact, the assignment from Unifund Portfolio A, LLC to Unifund CCR Partners indicates that Unifund CCR Partners owns nothing. The pertinent language of the assignment states:

> Assignor, for value received and in connection with the Agreement, transfers and assigns to Assignee all of Assignor's rights in the Receivables, *for collection purposes only,* including conducting litigation in Assignee's name, for those Receivables which Assignor owns or may acquire from time to time. *Assignor shall retain title and ownership of such Receivables.* The assignment is without recourse to Assignor and without warranty of any kind

(including, without limitation, warranties pertaining to title, validity, collectibility (sic), accuracy or sufficiency of information, and applicability of any statute of limitations), except as stated in the Agreement or herein. (emphasis added)

[6] Because standing denotes a party's justiciable interest in a controversy, it is only the party whose primary legal right has been breached that may seek redress for that injury. *Eaves,* 301 S.W.3d at 404. Without a breach of a legal right belonging to that party, that party has no standing to litigate. *Id.* (*citing Cadle Co. v. Lobingier,* 50 S.W.3d 662, 669–70 (Tex.App.-Fort Worth 2001, pet. denied)). Unifund CCR Partners's right is solely limited to taking whatever steps are necessary to collect a debt owned entirely by someone else, while holding no title, interest, or rights in anything else. We do not find that this is sufficient to establish that Unifund CCR Partners has standing to pursue this claim in its own name.

Cases that have found standing to exist all indicate that a finding of ownership of some type was made. Even the cases **\*30** cited to by Unifund CCR Partners demonstrate that some ownership interest was transferred by the assignor to the assignee. *See Sprint Communications Co., L.P. v. APCC Services, Inc.,* 554 U.S. 269, 128 S.Ct. 2531, 2541–43, 171 L.Ed.2d 424 (2008) (assignee with legal title to debt of a legal claim for money owed has standing to pursue the claim even if proceeds are to be entirely remitted to assignor); *see also Eaves,* 301 S.W.3d at 403–04 (pleadings and live testimony sufficiently demonstrated that Unifund owned the account in question to establish standing); *Cartwright v. MBank Corpus Christi, N.A.,* 865 S.W.2d 546, 549–50 (Tex.App.-Corpus Christi 1993, writ denied) (note transferred to MBank making MBank the holder of the note); *Schultz v. Aetna Business Credit, Inc.,* 540 S.W.2d 530, 531 (Tex.Civ.App.-San Antonio 1976, no writ) (assignor transferred "all of its rights, title and interests" in the relevant instrument, any accompanying promissory note or notes, and all rights and remedies under said instrument or notes); *Kelley v. Bluff Creek Oil Co.,* 298 S.W.2d 263, 267 (Tex.Civ.App.-Fort Worth 1956) (assignment transferred all "right, title and interest" in a claim, "with full power and authority to collect and receipt therefore"), *aff'd in part, and rev'd in part on other grounds,* 158 Tex. 180, 309 S.W.2d 208 (1958).

We find that without evidence of any ownership interest or title in the account that Unifund CCR Partners does not have standing to bring this suit and that the trial court did

not have subject matter jurisdiction over the action. We sustain issue one.

*Conclusion*

We conclude that Unifund CCR Partners did not have

standing to file suit against Shipley. Therefore, because the trial court lacked subject matter jurisdiction, we reverse the judgment of the trial court and render judgment dismissing the case.

---

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.